**In the Interest of A.C.S. and G.E.S., Children.**

No. 10–03–00392–CV.

Court of Appeals of Texas, Waco.

Dec. 15, 2004.

Robert A. Swearingen, Peterson & Swearingen, College Station, for appellant.

Scott Wesley Smith, Houston, pro se.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

Andrea Gayle Smith appeals an order modifying the child custody provisions of her divorce decree by requiring her children to return to Texas from South Carolina. Because the trial court abused its discretion by determining that the children's return to Texas would be in their best interest, we will reverse and remand.

### Background

Andrea and her former husband Scott were divorced in October 2002. The agreed decree designated the Smiths as joint managing conservators of their two daughters but designated Andrea as the person having the exclusive right to determine the children's primary residence. This designation imposed no geographical restriction on the children's residence. The decree did not contain a standard possession order but contained (1) specific possessory provisions in the event the parties resided more than 100 miles apart and (2) a provision requiring the parties to "share equally the travel expenses related to transferring possession of the children" if the children resided in a different state than Scott.

Andrea and the children moved to South Carolina shortly after the decree was signed. Scott filed a motion to modify the child support provisions of the decree in December 2002. Andrea responded with a motion to modify the custody provisions of the decree in April 2003. Scott amended his motion three days later to include a request that the court modify the custody provisions of the decree and in particular that the court impose a requirement that the children reside in Brazos County or an adjoining county.

After a hearing in April 2003, the court referred the parties to mediation. During the mediation, the parties agreed to temporary orders granting Scott more access to the children. However, mediation failed. At the conclusion of a second hearing in August, the court announced that it was partially granting Scott's motion to modify the decree.[1] In particular, the court ordered that the children reside in Texas within a triangular area from Collin County to Bexar County to Galveston County.

After the August hearing, Andrea retained new counsel. Counsel filed a motion to stay the court's decision and a motion to dismiss the case with prejudice because of Scott's failure to comply with a local rule requiring that the prevailing party tender a proposed judgment to the court within thirty days after rendition. At a hearing on these motions, Andrea's counsel raised for the first time the question of whether the trial court had exclusive, continuing jurisdiction under the

---

1. Scott was represented by counsel at the April hearing. However, he appeared *pro se* at the August hearing and has represented himself ever since.

Uniform Child Custody Jurisdiction and Enforcement Act (the "UCCJEA"). The court concluded that Andrea had waived her right to raise this complaint because she had not raised it sooner. The court signed an order in accordance with its previous oral rendition.

About seven months after signing the modification order and about two months after the appellee's brief was filed in this Court, the trial court signed and filed findings of fact and conclusions of law.

Andrea contends in four issues that the court abused its discretion by granting a modification of the custody provisions of the divorce decree because: (1)(a) Scott failed to file the affidavit required by section 156.102 for a motion to modify the designation of the person entitled to determine the primary residence of the children filed within one year after rendition of the order sought to be modified; and (b) the court failed to make a preliminary finding under the statute that the children's present environment may endanger them or significantly impair their emotional development; (2) the court failed to conduct a preliminary hearing to determine whether it still had continuing, exclusive jurisdiction under the UCCJEA; (3) there has been no material and substantial change of circumstances; and (4) the net effect of the decree will be to award Scott custody of the children (assuming Andrea's noncompliance) without any evidence that this is in the children's best interest.

In a supplemental brief, Andrea addresses the trial court's findings of fact and conclusions of law.[2] Andrea contends that: (1) there is no evidence or factually insufficient evidence to support certain findings; (2) the findings do not explain or justify the court's failure to comply with section 156.102; (3) the findings do not explain or justify the court's failure to make a preliminary determination regarding its jurisdiction under the UCCJEA; (4) the court abused its discretion by finding that Andrea's and the children's relocation to South Carolina was a material and substantial change of circumstances; and (5) the court abused its discretion by finding that the children's return to Texas would be in their best interest.

## The Trial Court's Belated Findings And Conclusions Will Be Considered By This Court Because Andrea Does Not Contend That She Has Been Harmed By Them And She Has Not Requested That The Appeal Be Abated

■ Andrea made a timely request for findings of fact and conclusions of law. Rule of Civil Procedure 297 requires a trial court to file its findings of fact and conclusions of law within twenty days after a timely request. Andrea also filed a notice of past due findings and conclusions. Nevertheless, the trial court's findings and conclusions are plainly untimely. *See* TEX.R. CIV. P. 297.

■ However, the rules of procedure do not expressly prohibit a court from issuing belated findings.[3] *Silbaugh v. Ramirez*, 126 S.W.3d 88, 91 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *Jefferson County Drainage Dist. No. 6 v. Lower Neches Valley Auth.*, 876 S.W.2d 940, 959–60 (Tex.App.-Beaumont 1994, writ denied); *Morrison v. Morrison*, 713 S.W.2d 377,

---

**2.** Scott has not filed a supplemental brief in response to the findings of fact and conclusions of law or in response to Andrea's supplemental brief.

**3.** As used in this discussion of the timeliness of the trial court's findings of fact and conclusions of law, the term "findings" refers to both the findings of fact and the conclusions of law.

380 (Tex.App.-Dallas 1986, writ dism'd). If an appellant can show harm from untimely findings, the appeal may be abated so the appellant can request amended or additional findings. *Silbaugh,* 126 S.W.3d at 91; *Jefferson County Drainage Dist.,* 876 S.W.2d at 960; *Morrison,* 713 S.W.2d at 380–81.

Here, although Andrea filed objections to the belated findings and a request for amended or additional findings with the trial court, she has not asked this Court to abate the appeal for further hearings on this matter. In addition, she has filed a supplemental brief in response to the court's findings. Because Andrea does not contend that she has been harmed by the belated findings and because she has not requested an abatement, we will give the findings due consideration. *See Silbaugh,* 126 S.W.3d at 91–92; *Jefferson County Drainage Dist.,* 876 S.W.2d at 959–60; *Morrison,* 713 S.W.2d at 380–81.

### The Trial Court Has Exclusive, Continuing Jurisdiction Under The UCCJEA

Andrea contends in her second issue that the court abused its discretion by failing to hold a preliminary hearing to determine whether Texas retained exclusive, continuing jurisdiction under the UCCJEA to modify the custody provisions of the divorce decree. She contends in her supplemental brief that the court's findings do not explain or justify the court's failure to make a preliminary determination regarding its jurisdiction under the UCCJEA.

### Subject Matter Jurisdiction Cannot Be Waived Or Conferred By Agreement Or Estoppel

■ Scott responds that Andrea waived this contention by failing to raise it until after trial. However, subject matter juris-diction under the UCCJEA cannot be waived and may be raised for the first time on appeal. *See In re Barnes,* 127 S.W.3d 843, 846 (Tex.App.-San Antonio 2003, orig. proceeding); *In re Jeffries,* 979 S.W.2d 429, 435 (Tex.App.-Waco 1998, orig. proceeding); *accord Waco Indep. Sch. Dist. v. Gibson,* 22 S.W.3d 849, 851 (Tex.2000).

■ Because Andrea herself filed a motion to modify, alleging in pertinent part, "[t]his Court has continuing, exclusive jurisdiction of this suit," it could be argued that she made a judicial admission that the trial court has subject matter jurisdiction or is estopped to deny the court's jurisdiction. However, subject matter jurisdiction cannot be conferred by agreement. *Morrow v. Corbin,* 122 Tex. 553, 62 S.W.2d 641, 649 (1933); *J.M. Davidson, Inc. v. Webster,* 49 S.W.3d 507, 515 (Tex.App.-Corpus Christi 2001, no pet.); *Kanz v. Hood,* 17 S.W.3d 311, 318 (Tex.App.-Waco 2000, pet. denied). Nor can it be conferred by estoppel. *Wilmer–Hutchins Indep. Sch. Dist. v. Sullivan,* 51 S.W.3d 293, 294 (Tex.2001) (per curiam). If subject-matter jurisdiction cannot be conferred by agreement or estoppel, then it cannot be conferred by judicial admission.

### The Children Must Have A Significant Connection With Texas Or Substantial Evidence Must Exist In Texas Regarding The Children's Welfare For Texas To Retain Exclusive, Continuing Jurisdiction Under The UCCJEA

Under section 152.202 of the UCCJEA, Texas retains "exclusive continuing jurisdiction" until:

(1) a court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent, have a significant connection with this state and that substantial

evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

(2) a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

TEX. FAM.CODE ANN. § 152.202(a) (Vernon 2002). If either a "significant connection" exists or "substantial evidence" is present, then Texas retains jurisdiction. *In re Forlenza*, 140 S.W.3d 373, 379 (Tex.2004) (orig.proceeding).

■ Visitation within the state is generally considered as evidence of a significant connection, particularly when the children maintain a relationship with relatives in the state other than the noncustodial parent. *Id.* at 377.

**The Question Of Jurisdiction Must Be Examined According To The Facts In Existence When The First Motion To Modify The Custody Provisions Of The Decree Was Filed**

■ The pertinent time frame for this determination is when the motion to modify the prior custody order is filed. *Id.* at 376. The parties focus on the date Scott filed his "First Amended Petition to Modify" as the date at which jurisdiction should be determined. However, the parties filed three different motions to modify the divorce decree, and any one of these may be the one which establishes the date at which the determination of the trial court's jurisdiction must be made. Those motions are: (1) Scott's December 2002 motion to modify the child support provisions of the decree; (2) Andrea's April 2003 motion to modify the custody provisions of the decree; and (3) Scott's April 2003 amended motion to modify the custody and support provisions of the decree.

■ The important question here is whether Scott's amended motion relates back in time to his original motion. *See In re B.O.G.*, 48 S.W.3d 312, 315–16 (Tex. App.-Waco 2001, pet. denied). The amended motion relates back to the original if it does not allege "a wholly new, distinct, or different matter." *Id.* (citing *Ex parte Goad*, 690 S.W.2d 894, 896 (Tex.1985) (orig.proceeding)). The original motion sought only a reduction in child support. The amended motion added a request for modification of the custody provisions of the decree in addition to the request for a reduction in child support. Because Scott first sought a modification of the custody provisions of the decree in the amended motion, we conclude that it alleges a "wholly new, distinct, [and] different matter." *Cf. id.* (amended motion to modify custody and support provisions related back to prior motion to modify custody and support provisions). Thus, we conclude that the amended motion does not relate back to the date of the original motion.

Accordingly, the pertinent inquiry is whether, at the time Andrea filed her motion to modify, the children had a "significant connection" with Texas or "substantial evidence" was available in Texas "concerning [their] care, protection, training, and personal relationships." TEX. FAM.CODE ANN. § 152.202(a)(1); *Forlenza*, 140 S.W.3d at 379.

**Because Of The Children's Visitation With Scott And Their Relationship With Members Of His Family, The Children Retained A Significant Connection With Texas When Andrea Filed Her Motion To Modify**

■ The parties attach some significance to the fact that South Carolina had not yet become the children's "home state"

when the motion to modify was filed. Under the terms of the Parental Kidnapping Prevention Act (the "PKPA") and under the former Uniform Child Custody Jurisdiction Act, this fact would be significant. *See* Tex. Fam.Code Ann. § 155.003 (Vernon 2002); Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, sec. 152.003(a)(1) 1995 Tex. Gen. Laws 113, 141 (amended 1999) (current version at Tex. Fam.Code Ann. §§ 152.201, 152.202 (Vernon 2002)). However, section 155.003(b)(2) of the PKPA expressly recognizes that the terms of the UCCJEA control over the terms of the PKPA. *Id.* § 155.003(b)(2); *accord id.* § 152.002 (Vernon 2002); *In re McCormick,* 87 S.W.3d 746, 750 (Tex.App.-Amarillo 2002, orig. proceeding); *B.O.G.,* 48 S.W.3d at 318.

Scott contends that the court's exercise of jurisdiction is justified regardless of whether the court should have held a preliminary hearing because he presented evidence "that the children's present environment, which is being so far from their father, does significantly impair the children's emotional development." He also contends that the Texas court will maintain "continuous, exclusive jurisdiction over this case as long as [the] children are of the age of minority."

However, the latter statement is simply incorrect under the UCCJEA, and the evidence referred to in the former statement does not present a valid basis for a Texas court to exercise jurisdiction. *Cf.* Tex. Fam. Code Ann. § 152.204(a) (Vernon 2002) (Texas court may exercise "temporary emergency jurisdiction" over a child who has been abandoned in the state or if a child, sibling, or parent "is subjected to or threatened with mistreatment or abuse").

The trial court erred by failing to examine its own subject matter jurisdiction under the UCCJEA. *See id.* § 152.107 (Vernon 2002). We now examine whether this error was harmful. *See* Tex.R.App. P. 44.1(a).

■■■■ Scott testified that he had five visits with the children over an eight-month period. To exercise his possessory rights, he traveled to South Carolina twice to be with them. Scott also testified that his daughters enjoy playing with their cousins in Houston (his sister's children), who are close in age to the Smith children.

From this evidence, the trial court would have been justified in concluding that the children retained a "significant connection" with Texas when Andrea filed the motion to modify. *See Forlenza,* 140 S.W.3d at 376–77. Accordingly, the trial court's failure to examine its own subject matter jurisdiction under the UCCJEA did not result in the rendition of an improper judgment. *See* Tex.R.App. P. 44.1(a). Thus, we overrule Andrea's second issue.

### Scott's Failure To File The Affidavit Required By Section 156.102 Was Not Harmful

Andrea contends in her first issue that the court abused its discretion by ordering a modification of the designation of which parent has the exclusive right to determine the children's primary residence because Scott failed to file the affidavit required by section 156.102 and because the court failed to make a preliminary finding under the statute that the children's present environment may endanger them or significantly impair their emotional development. She contends in her supplemental brief that the court's findings do not explain or justify the failure to comply with section 156.102.

Scott responds that: (1) Andrea failed to preserve this issue for review because she did not bring this requirement to the court's attention until after trial; (2) the best interest of the children is the para-

mount consideration in such cases and necessarily trumps the "technical" requirement of the statute; (3) any error was rendered harmless by trial testimony establishing the information required in the affidavit; and (4) section 156.102 does not apply because he did not seek to modify Andrea's status as the parent with the exclusive right to determine the children's primary residence.

■ To preserve a complaint regarding the adequacy of pleadings in a non-jury case, an objection must be made in writing and presented to the trial court before the judgment is signed. TEX.R. CIV. P. 90; *but cf. Camp v. Camp,* 591 S.W.2d 578, 582–83 (Tex.Civ.App.-Fort Worth 1979, no writ) (suggesting similar complaint was waived because respondent failed to object "prior to or upon trial"). Andrea presented this complaint to the trial court in a motion to stay which she filed after the trial was concluded but before the judgment was signed. Accordingly, she has preserved this issue for review. *See* TEX.R. CIV. P. 90.

■ Section 156.102(a) provides:

If a suit seeking to modify the designation of the person having the exclusive right to designate the primary residence of a child is filed not later than one year after the earlier of the date of the rendition of the order or the date of the signing of a mediated or collaborative law settlement agreement on which the order is based, the person filing the suit shall execute and attach an affidavit as provided by Subsection (b).

TEX. FAM.CODE ANN. § 156.102(a) (Vernon Supp.2004–2005).

The divorce decree granted Andrea "the right to establish the primary residence (domicile) of the children *without restriction.*" (emphasis added). Scott's amended petition to modify asked that this designation be modified so that Andrea had the right to establish the children's primary residence *"within Brazos County, Texas or counties contiguous thereto."* (emphasis added).

Because Scott sought a significant geographical narrowing of the terms under which Andrea could designate the children's primary residence, we conclude that he sought a modification of the designation. *Cf. In re Ostrofsky,* 112 S.W.3d 925, 929 (Tex. App.-Houston [14th Dist.] 2003, orig. proceeding) (temporary order requiring children to leave home of parent with right to designate primary residence and live at boarding school "effectively deprive[d] relator of the right to determine the children's primary residence"). Thus, section 156.102 applies.

■ It is undisputed that Scott did not file the affidavit required by section 156.102. Section 156.102(c) requires a court to deny a motion to modify governed by the statute and refuse to schedule a hearing on its merits if the affidavit is not filed. *See Burkhart v. Burkhart,* 960 S.W.2d 321, 323–24 (Tex.App.-Houston [1st Dist.] 1997, pet. denied). The court failed to comply with this requirement. We now examine whether this error was harmful. *See* TEX.R.APP. P. 44.1(a).

■ Scott testified in some detail that Andrea was limiting his access to the children. He described a particular visit in South Carolina during which one of his daughters cried because she was not going to be able to see her paternal grandmother and cousins. Thus, he presented evidence which would support an allegation that the children's environment may "significantly impair [their] emotional development." *See Mobley v. Mobley,* 684 S.W.2d 226, 229–30 (Tex.App.-Fort Worth 1985, writ dism'd); *cf. Burkhart,* 960 S.W.2d at 323–24 (bare allegation that respondent was "in

essence denying [petitioner's] rightful visitation" did not suffice to show substantial impairment). Thus, any error in the court's decision to conduct a hearing on Scott's petition to modify without the required affidavit was rendered harmless by Scott's testimony. *See Camp,* 591 S.W.2d at 582–83 (statutory provisions satisfied by evidence despite lack of affidavit).

Accordingly, we overrule Andrea's first issue.

## Andrea's Relocation to South Carolina Was A Material Change Of Circumstances

Andrea contends in her third issue that the court abused its discretion by modifying the custody provisions of the decree because Scott presented factually insufficient evidence to prove that her move to South Carolina constituted a material and substantial change of circumstances. She contends in her supplemental brief that there is no evidence or factually insufficient evidence to support the following findings:

2. [Andrea] moved to South Carolina after the divorce to live nearer or closer to her parents. Her initial unemployment after the move is considered by the court to be a voluntary unemployment. Prior to the final decree being entered (on or about October 10, 2002), [Andrea] and [Scott] had previously contemplated a decree that had a geographic restriction restricting the residence of the children to the vicinity of Brazos County. This was contemplated when Mr. Jack Dillard was employed as Scott's attorney. At the time that the final decree was entered, however, Mr. Smith was unrepresented by counsel and was representing himself pro se.

3. The court accepts as true [Scott's] testimony that he did not know that the geographic restriction had been removed from the final Agreed Decree of Divorce (although, in balance, he did sign it).

4. [Scott] did not consent to [Andrea's] moving the children to South Carolina. [Andrea's] moving the children to South Carolina was done completely without consulting with [Scott].

5. [Andrea], over the course of many months since the divorce, has impeded the communications between the children and their father, [Scott]. [Andrea] has also engaged in a pattern of parental alienation. That is, she has sought to minimize or thwart both verbal communications between the children and their father and physical visits during what would be normal periods of possession under the Court's orders.

. . .

7. [Andrea's] unilateral decision to move the children to South Carolina has resulted in a substantial increase in costs of transporting the children to and from [Scott] during his periods of possession of the children. That increase[ ] in costs is nearly prohibitive, and substantially impairs [Scott's] ability to have substantial meaningful possession of and access to the children. The Court further concludes that [Andrea's] relocation of the children to South Carolina is a 'substantial and material change of circumstances.'

8. It is preferable that the time the children spend in travel getting to and from their father for periods of access for the children be shortened than what is presently required given their present temporary residence in South Carolina. Further, the Court concludes, as a factual matter, that, a reduction of time and distance required for the children to travel to see their father (or for him to see them) is in the children's best interest.

9. The multi-county region in Texas to which the court has restricted the children's residence is vast and encompasses the majority of this great State's metropolitan areas. The costs of transporting the children between any two major metropolitan areas within the aforesaid multi-county region in Texas is substantially less than travel costs between Texas and South Carolina, and such intra-state travel costs are not prohibitive.

10. [Andrea] has substantial skills and ability in the marketplace and has substantial employability in her chosen profession. Accordingly, and the court finds she could easily find employment in the aforesaid vast multi-county region in the State of Texas with reasonable effort.

A trial court has broad discretion in child custody matters. *Pena v. Pena*, 8 S.W.3d 639, 639 (Tex.1999) (per curiam); *In re J.R.P.*, 55 S.W.3d 147, 151 (Tex.App.-Corpus Christi 2001, pet. denied). Thus, we review child custody orders under an abuse-of-discretion standard. *See In re T.J.S.*, 71 S.W.3d 452, 458 (Tex.App.-Waco 2002, pet. denied); *J.R.P.*, 55 S.W.3d at 151.

We do not conduct an independent review of findings of fact in a child custody case under traditional legal and factual sufficiency standards. *See In re J.C.K.*, 143 S.W.3d 131, 135 (Tex.App.-Waco 2004, no pet.); *London v. London*, 94 S.W.3d 139, 143–44 (Tex.App.-Houston [14th Dist.] 2002, no pet.); *cf. Norris v. Norris*, 56 S.W.3d 333, 338 (Tex.App.-El Paso 2001, no pet.). Rather, legal and factual sufficiency are factors which can be considered in determining whether an abuse of discretion has occurred. *J.C.K.*, 143 S.W.3d at 135; *London*, 94 S.W.3d at 143–44; *accord Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991).

## The Evidence Does Not Support Some Of The Challenged Findings

Andrea contends that there is no evidence or factually insufficient evidence to support Findings of Fact Nos. 2 through 5 and 7 through 10, both inclusive. Restated, the pertinent parts of these findings which she challenges are that:

(1) the parties had previously contemplated that the divorce decree would restrict the residence of the children to the Brazos County vicinity;

(2) Scott did not consent to Andrea and the children moving to South Carolina;

(3) Andrea has impeded communications between Scott and the children and has interfered with Scott's exercise of his visitation rights;

(4) the move to South Carolina has substantially increased the cost of transportation for Scott's exercise of his visitation rights to the point that the costs are "nearly prohibitive";

(5) the move to South Carolina is a material and substantial change of circumstances;

(6) transportation costs and travel time for visitation will be "substantially less" if Andrea and the children return to Texas; and

(7) Andrea can "easily" find suitable employment in Texas "with reasonable effort."

Andrea challenges the court's finding that the parties had initially contemplated a provision in the divorce decree restricting the children's residence to the Brazos County vicinity. Scott testified that he thought Andrea intended to move to the Austin area after the divorce. Andrea testified that Scott knew of her plan to move to South Carolina when the decree was signed. The record contains no evi-

dence of the content of prior drafts of the decree or of negotiations between the parties about the contents of the decree. Although Travis County is arguably in the "vicinity" of Brazos County, the record contains no evidence that the parties ever contemplated the imposition of a geographical restriction on the children's residence. Thus, the court abused its discretion by so finding.

■ Andrea challenges the court's finding that Scott did not consent to her move with the children to South Carolina. She points to specific provisions of the agreed decree regarding visitation if the parents lived more than 100 miles apart and the sharing of expenses if the parents lived in different states as evidence that Scott knew of and consented to her move to South Carolina.

However, Scott testified that he did not know she was moving to South Carolina until after the fact. Andrea disputed this testimony and testified that she told Scott of her intentions the weekend before she moved. Although Scott was represented by counsel during the early stages of the divorce proceeding, he did not have counsel when the decree was signed. Thus, he contends that he was not completely familiar with the terms of the decree which had been negotiated by his attorney.

Because of the disputed testimony and because the move to South Carolina did not occur until after the divorce decree, we cannot say that the court abused its discretion by finding that the Scott did not consent to Andrea's moving to South Carolina.

■ Andrea challenges the court's finding that she impeded communications between Scott and the children and interfered with his exercise of visitation rights. The record contains conflicting evidence regarding whether Andrea prevented Scott from talking to his children on the telephone at times and whether she made it difficult for him to exercise his visitation rights. Thus, we cannot say that the court abused its discretion by finding that she had done so.

■ Andrea challenges the court's finding that her move to South Carolina substantially increased the cost of transportation to the point that those costs are "nearly prohibitive" and that transportation costs and travel time would be "substantially less" if the children and she returned to Texas.

Scott testified that he could purchase a round-trip plane ticket to Atlanta for $225. The parties agree that it takes approximately four hours to travel from Greenville, South Carolina to Houston if they fly out of Atlanta. Most of that travel time comes from a two and one-half hour drive from Greenville to Atlanta. Scott also testified that there are one or two direct flights from Houston to Greenville each day, but that they generally cost significantly more than tickets to Atlanta.[4]

Scott testified in the March hearing that he was temporarily having difficulty meeting his monthly expenses because he was unemployed. However, he never characterized the travel expenses for visitation as "prohibitive."

The trial judge advised the parties at the conclusion of the August hearing, "I happen to know that you can get a flight ticket from Houston to Dallas for about $100 if you get it two months out; from San Antonio to Dallas, for about $100 if you get it two months out; or from San Antonio to Houston for about $150. And

4. Scott testified that he has seen tickets from Houston to Greenville sell for only $50 or $60 more, but generally such tickets cost between 2– and 5–times more than tickets to Atlanta.

the flight times are about an hour on each leg of the triangle."

■ A trial court may take judicial notice of a fact which is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." TEX.R. EVID. 201(b). However, "personal knowledge is not judicial knowledge, and a judge may personally know a fact of which he cannot take judicial knowledge." *Eagle Trucking Co. v. Tex. Bitulithic Co.*, 612 S.W.2d 503, 506 (Tex.1981); *1.70 Acres of Real Prop. v. State*, 935 S.W.2d 480, 489 (Tex.App.-Beaumont 1996, no writ); *accord Levit v. Adams*, 841 S.W.2d 478, 485 (Tex.App.-Houston [1st Dist.] 1992), *rev'd on other grounds*, 850 S.W.2d 469 (Tex.1993) (per curiam).

The trial judge's personal knowledge about flight prices and flight times within Texas is knowledge of facts of which the judge cannot take judicial knowledge. *See id.; see also Havins v. First Natl. Bank of Paducah*, 919 S.W.2d 177, 184 (Tex.App.-Amarillo 1996, no writ) (trial court cannot take judicial notice of "circumstances surrounding and market factors influencing a local cattle auction"). Thus, the court abused its discretion by finding that the increase in transportation costs after the move to South Carolina was "nearly prohibitive" and by finding that transportation costs and travel times would be "substantially less" if Andrea and the children returned to Texas.

■ Andrea challenges the court's finding that she could "easily" find suitable employment in Texas "with reasonable effort." Scott testified that he had had a difficult time finding a mid-level management position after he left his position in Brazos County shortly before the divorce.

Andrea testified that she searched for administrative positions in her field in the major metropolitan areas of Texas without success before she moved to South Carolina. The record is devoid of evidence to support the court's finding. Thus, the court abused its discretion by finding that Andrea could "easily" find suitable employment in Texas "with reasonable effort."

## The Findings With Support In The Record Support The Court's Finding Of Changed Circumstances

■ Andrea cites the decision of the El Paso Court in *Bates v. Tesar* for the proposition that "relocation, regardless of distance, will not alone suffice to establish a material and substantial change in circumstances." 81 S.W.3d 411, 430 (Tex.App.-El Paso 2002, no pet.). However, that court stated the proposition somewhat differently.

[W]e do not hold that relocation, regardless of distance, will suffice to establish a material and substantial change in circumstances. But if the custodial parent moves a significant distance, a finding of changed circumstances may be appropriate. Such a decision is necessarily fact intensive but we can glean from the case law certain factors which the court should consider:

- the distance involved;
- the quality of the relationship between the non-custodial parent and the child;
- the nature and quantity of the child's contacts with the non-custodial parent, both *de jure* and *de facto;*
- whether the relocation would deprive the non-custodial parent of regular and meaningful access to the children;
- the impact of the move on the quantity and quality of the child's contact with the non-custodial parent;
- the motive for the move;

- the motive for opposing the move;
- the feasibility of preserving the relationship between the non-custodial parent and the child through suitable visitation arrangements; and
- the proximity, availability, and safety of travel arrangements.

*Id.; accord Knopp v. Knopp*, No. 14–02–00285–CV, 2003 WL 21025527, at \*3, 2003 Tex.App. LEXIS 3950, at \*8–9 (Tex.App.-Houston [14th Dist.] May 8, 2003, no pet.) (mem.op.). We consider the court's decision with these factors in mind.

Andrea testified that it is approximately 900 miles from Texas to her home in South Carolina. Thus, the distance of the move tends to support the court's finding.

Under the terms of the divorce decree, Scott was to have visits with his daughters on the first, third, and fifth weekends of each month and on Wednesday evenings so long as Andrea and he lived within 100 miles of each other. Scott testified that he visited his daughters "quite a bit" during the pendency of the divorce and before he moved to the Houston area. He stated that he visited them "a couple of times a week" after he moved. Andrea disputed this testimony and testified that Scott did not visit the children after he moved to Houston.

Assuming that the court chose to believe Scott's testimony over Andrea's on this issue, the divorce decree provided Scott only one weekend visit per month or one week-long visit every two months after Andrea and the children moved to South Carolina. Thus, the children had fewer *de jure* and *de facto* contacts with Scott after moving than before under the terms of the decree.

In addition, Scott presented evidence (disputed by Andrea) that Andrea made his visits difficult, thus reducing the quality of his contacts with the children.

The children's move to South Carolina has affected Scott's regular and meaningful access to the children. However, the same would have been true if Andrea had moved anywhere in Texas more than 100 miles from Houston. Thus, this factor does not add much impetus to Scott's contention that the move was a material and substantial change of circumstances.

Andrea testified that she moved to South Carolina because of her desire to leave an embarrassing work environment and to be closer to her immediate family. However, the record also contains evidence that she interfered with Scott' access to the children, which tends to support an inference that she moved to restrict Scott's visits with the children. In a similar fashion, Scott's opposition to the children remaining in South Carolina appears to be based solely on his desire to have more contact with his children. Thus, the evidence relevant to the parties' respective motivations for or against the move to South Carolina tend to support the court's finding.

As evidenced by the temporary orders agreed to by the parties after the initial hearing in April, it was feasible to contrive appropriate visitation arrangements which would serve to preserve Scott's relationship with his children. Both parties testified in the August hearing that the visits made under the terms of the temporary orders went well, and the relationships of all involved and corresponding communication likewise improved. Thus, the success of the visitation arrangements under the temporary orders tends to contradict the court's finding.

The success of these visits likewise demonstrates the proximity, availability, and safety of travel arrangements. Thus, the availability of adequate travel arrangements tends to contradict the court's finding.

Having considered the evidence relevant to the *Bates* factors, we conclude that the court did not abuse its discretion by finding that Andrea's move with the children to South Carolina was a material and substantial change of circumstances. *See Knopp*, 2003 WL 21025527, at *5, 2003 Tex.App. LEXIS 3950, at *9–12; *Bates*, 81 S.W.3d at 430–32.

Accordingly, we overrule Andrea's third issue.

### It Is Not In The Best Interest Of The Children To Return To Texas

■■■ Andrea contends in her fourth issue, as clarified in her supplemental brief, that the court abused its discretion by finding that it would be in the best interest of the children to return to Texas.

In *Lenz v. Lenz*, the Supreme Court conducted a review of what factors other states consider in determining what is in the best interest of the children in the relocation context. 79 S.W.3d 10, 14–16 (Tex.2002). The Amarillo court has encapsulated these factors as follows:

- reasons for and against the move; education, health, and leisure opportunities; accommodation of special needs or talents of the children; effect on extended family relationships; effect on visitation and communication with the noncustodial parent; the noncustodial parent's ability to relocate; *Baures v. Lewis*, 167 N.J. 91, 770 A.2d 214, 229–30 (N.J.2001);
- parent's good faith in requesting the move; continuation of a meaningful relationship with the noncustodial parent; economic, emotional, and education enhancement for the children and the custodial parent; effect on extended family relationships; *Tropea v. Tropea*, 87 N.Y.2d 727, 665 N.E.2d

145, 149–51, 642 N.Y.S.2d 575 (N.Y. 1996); and

- employment and education opportunities of the parents; the ages of the children; community ties; health and educational needs of the children; *In re Marriage of Burgess*, 13 Cal.4th 25, 51 Cal.Rptr.2d 444, 913 P.2d 473 (Cal. 1996).

*In re C.R.O.*, 96 S.W.3d 442, 449 (Tex. App.-Amarillo 2002, pet. denied); *see also Knopp*, 2003 WL 21025527, at *5–6, 2003 Tex.App. LEXIS 3950, at *13–14; *Echols v. Olivarez*, 85 S.W.3d 475, 481–82 (Tex. App.-Austin 2002, no pet.). We agree that this listing fairly encapsulates the factors considered by the Supreme Court in *Lenz*. *Cf. Lenz*, 79 S.W.3d at 14–16.

■■■ To the extent applicable, the *Holley*[5] factors may also be considered in this analysis. *C.R.O.*, 96 S.W.3d at 451; *Knopp*, 2003 WL 21025527, at *6, 2003 Tex.App. LEXIS 3950, at *16–18; *Bates*, 81 S.W.3d at 433–34. Those factors include: (1) the desires of the children, (2) the emotional and physical needs of the children now and in the future, (3) the emotional and physical danger to the children now and in the future, (4) the parental abilities of the individuals involved, (5) the programs available to those individuals to promote the best interest of the children, (6) the plans for the children by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper, and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976); *C.R.O.*, 96 S.W.3d at 451; *Bates*, 81 S.W.3d at 434.

A child's best interest cannot be determined in a vacuum. Although consideration of the visitation rights of the non-

---

5. *Holley v. Adams,* 544 S.W.2d 367 (Tex. 1976).

custodial parent is important, we must primarily concentrate on the general quality of life for both the child and the custodial parent in assessing whether a change is positive and in the child's best interest.

*Echols,* 85 S.W.3d at 482.

Here, it is undisputed that requiring the Smiths' children to return to Texas would result in the loss by Andrea of a good-paying job, a rent-free home, and the day-to-day relationships she has established with friends, co-workers, and her own family in South Carolina. The contemplated relocation would also diminish the children's relationship with Andrea's family.

Conversely, a relocation to Texas would arguably improve the children's relationship with Scott and his extended family.

There is no clear indication in the record that Andrea would be able to "easily" locate suitable employment or housing in Texas. Thus, the contemplated relocation would, at a minimum, place the children in a position of uncertainty for an unknown period of time.

Texas courts have considered the economic status of the custodial parent and the proximity of family and friends as important factors in determining whether a relocation is in the children's best interest. *See Lenz,* 79 S.W.3d at 17–19; *Hoffman v. Hoffman,* No. 03–03–00062–CV, 2003 WL 22669032, at *3, 2003 Tex.App. LEXIS 9584, at *19–20 (Tex.App.-Austin Nov.13, 2003, no pet.) (mem.op.); *Knopp,* 2003 WL 21025527, at *6, 2003 Tex.App. LEXIS 3950, at *15–21; *C.R.O.,* 96 S.W.3d at 450–51; *Echols,* 85 S.W.3d at 481–83; *cf. Bates,* 81 S.W.3d at 433–35 (focusing more on impact of relocation on children's relationship with father).

Because the children were relatively young when they moved to South Carolina, they had not had the opportunity to establish lasting personal relationships in Brazos County outside of family. During their time in South Carolina, they have presumably formed such relationships. It is undisputed that they have grown closer to their maternal grandparents and others in Andrea's extended family. Andrea has likewise found support from friends and family in South Carolina. She has secured a good-paying job, and her parents have provided a suitable home for her children and she.

Conversely, the children's relationship with Scott has been strained by their move. A return to Texas would no doubt improve that relationship as well as the relationship between the children and Scott's extended family. However, those improvements would come at the expense of the positive situation which Andrea and the children have in South Carolina. Although Andrea could conceivably establish herself in Texas in due time, there is no certainty as to how long that would take to accomplish.

In addition, as a result of the mediated temporary orders, visitation has improved dramatically since the initiation of this litigation without the necessity of the children relocating to Texas.

Having reviewed the evidence pertinent to the court's best-interest finding, we conclude that the court abused its discretion by finding that requiring the children to return to Texas is in their best interest. *See Echols,* 85 S.W.3d at 481–83 ("[W]e must primarily concentrate on the general quality of life for both the child and the custodial parent in assessing whether a change is positive and in the child's best interest."); *cf. Bates,* 81 S.W.3d at 434 ("lifestyle" considerations advanced by mother in favor of relocation "were outweighed by the importance of the children having frequent and continuing contact with their father").

Accordingly, we sustain Andrea's fourth issue.

We reverse the judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

Chief Justice GRAY concurs in the judgment but not the analysis reflected in the opinion.