# MEMORANDUM OPINION

No. 04-07-00368-CV

Carlos **BLANCO**, Jr. and Mariagloria Gonzalez,
Appellants

v.

**THE CITY OF LAREDO**,
Appellee

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2004-CVQ-000760-D2
Honorable Raul Vasquez, Judge Presiding

Opinion by:    Catherine Stone, Justice

Sitting:    Catherine Stone, Justice
            Sandee Bryan Marion, Justice
            Rebecca Simmons, Justice

Delivered and Filed:  April 9, 2008

AFFIRMED

Carlos Blanco, Jr. and Mariagloria Gonzalez appeal the trial court's judgment challenging the legal sufficiency of the evidence to support the trial court's implied finding that the City of Laredo did not violate the provisions of the Texas Public Information Act ("Act").[1] Based on its

---

[1] We construe the appellants' issue as a complaint regarding the legal sufficiency of the evidence because the appellants request that we reverse the trial court's judgment and render judgment in their favor. *See French v. Moore*, 169 S.W.3d 1, 15 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

finding, the trial court concluded that Blanco and Gonzalez were not entitled to the declaratory or mandamus relief they sought.[2]  Because the issues in this appeal involve the application of well-settled principles of law, we affirm the trial court's judgment in this memorandum opinion.

Although appellants requested findings of fact and conclusions of law and filed a notice of past due findings of fact and conclusions of law, the recovery sought by appellants hinged on the trial court favorably finding a violation of the Act.  Appellants did not request that we abate the appeal for the entry of findings and conclusions or assert that their absence required them to guess at the reasons for the trial court's judgment.  *See In re A.C.S.*, 157 S.W.3d 9, 15 (Tex. App.—Waco 2004, no pet.) (noting abatement would be remedy); *Larry F. Smith, Inc. v. The Weber Co.*, 110 S.W.3d 611, 614 (Tex. App.—Dallas 2003, pet. denied) (noting appellant is not harmed by absence of findings and conclusions where single ground of recovery is asserted and appellant does not have to guess at the reasons for the trial court's judgment).  Under these circumstances, therefore, findings and conclusions necessary to support the judgment must be implied.  *G. Prop. Mgmt., Ltd. v. Multivest Fin. Servs. of Tex., Inc.*, 219 S.W.3d 37, 47 (Tex. App.—San Antonio 2006).  When, as here, the appellate record includes the clerk's and reporter's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court. *G. Prop. Mgmt., Ltd.*, 219 S.W.3d at 47.

Where a party bears the burden of proof and the factfinder fails to find for that party, there are two inquiries for a reviewing court in considering a legal sufficiency challenge:  first, the record must be examined for evidence that supports the factfinder's failure to find for the party with the

---

[2] Although the trial court denied the relief, it congratulated Blanco "for being inquiring, and for trying to know more about our governmental function."  The trial court stated, "I think, if anything, we should have more people like you that want to know."

burden of proof;  and second, if there is no evidence to support the failure to make a finding, then, the entire record must be examined to see if the contrary proposition is established as a matter of law. *G. Prop. Mgmt., Ltd.*, 219 S.W.3d at 47.  In any sufficiency review, the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony.  *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).  We may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence.  *Id.*

The appellants filed suit claiming that the City violated the Act by failing to provide complete records in response to the following requests they made: (1) May 21, 2003, letter request on behalf of Gonzalez to examine and inspect expenditures from the discretionary account for Mayor Elizabeth "Betty" Flores for the months of September and October, 2002; (2) October 31, 2003, e-mail request by Blanco for all "City of Laredo Credit Card Transactions" for seven listed individuals from January of 2002 through October of 2003; and (3) November 22, 2003, e-mail request by Blanco for "detail descriptions for credit card transactions" by City Manager Larry Dovalina, Mayor Flores, and Health Department Director Dr. Hector Gonzalez and the corresponding "credit card receipts" from January 2002 through November of 2003.[3]  At a bench trial, evidence was presented that the City provided the following responses to the requests: (1) an e-mail dated May 30, 2003, from Blasita Lopez, the City's Public Information and Telecommunications Manager, stating a schedule of date and times for the inspection of the expenditures would be forthcoming, followed by a subsequent letter dated June 11, 2003, from City Manager Larry Dovalina stating that Mayor Flores did not have a

---

[3] Although evidence was also presented regarding two requests made by John Castro, Castro was not a party to the underlying lawsuit and testified in a deposition that he was supplied the information he requested after his second request.

discretionary account;[4] (2) a 117 page typewritten detail of credit card transactions;[5] and (3) 1,100 pages of copies of credit card statements and receipts.[6] During trial, appellants challenged the absence of certain credit card receipts from the records provided, including: (1) a receipt for lodging at La Posada Motor Hotel in Laredo; (2) a $52,000.00 charge by a hotel in Washington, D.C.;[7] (3) a purchase at The Gap clothing store by City Manager Larry Dovalina; and (4) a purchase by Mayor Flores from the QVC shopping channel.[8]

Blanco testified that he never contacted the City after receiving the 1,100 pages of documents to inquire about the missing receipts and admitted that he had no idea if those receipts existed or not. Blanco further admitted that he had taken no further action to determine whether any such receipts existed prior to filing his lawsuit. Finally, Blanco admitted that "[r]eceipts get lost all the time."

---

[4] Lopez testified that she initially gathered some material that she believed was responsive to the request; however, it was later determined that it did not relate to a "discretionary account" because the Mayor did not have such an account.

[5] Lopez testified that the typewritten detail was provided in lieu of copies of statements because the statements included personal charges that Lopez did not believe were responsive to the request for "City of Laredo Credit Card Transactions."

[6] Although evidence was introduced regarding a successful challenge to the cost of providing the records in response to the third request, the dispute over the cost was not evidence that incomplete information was provided.

[7] Lopez testified that the expense was incurred in connection with an annual trip City representatives make to Washington, D.C. to meet with congressional representatives and agencies that provide grants and other support to the City. In denying the City's motion for directed verdict after the plaintiffs rested, the trial court expressed its displeasure with the absence of this receipt, stating, "I certainly don't see how the City could pay a $52,000 bill, without a receipt for the same. ... I'm kind of worried about that, to be honest with you. That doesn't mean that they didn't provide you all the information that they had. ... I want to know why the City does not have a receipt, or a verification, of how they paid a $52,000.00 bill because that is not proper." Before entering judgment, the trial court sent a letter to the attorneys and requested that the City contact the hotel and ask for a detailed bill. At the hearing on the entry of judgment, the City's attorney informed the trial court that the hotel had been contacted but the hotel had changed software and was unable to produce any billing records.

[8] In making its ruling, the trial court expressly stated its disapproval with the use of a governmental credit card for personal purposes. The trial court stated, "And, if the City does not have a policy, it certainly should."

Blasita Lopez testified that the City had produced all documents it possessed that were responsive to the requests, and the receipts relating to the charges being challenged were not in the City's records. Lopez further testified that a receipt could be absent because the receipt was lost or the establishment ran out of tape or otherwise did not have a receipt to provide.

The Act only compels disclosure of public information that is in existence and does not require a government entity to prepare or assemble new information in response to a request. *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 676 (Tex. 1995); *Thompson v. Miller*, No. 03-98-00627-CV, 1999 WL 549205 at *2 (Tex. App.—Austin July 29, 1999, no pet.). Deferring to the trial court's assessment of the credibility of the witnesses and the weight to be given to the evidence, the evidence is legally sufficient to support the trial court's implied finding that the City had produced all public information that existed in response to the appellants' requests.[9] The trial court's judgment is affirmed.

Catherine Stone, Justice

---

[9] As previously noted, although the trial court found that the City had produced all public information that existed in response to the appellants' requests, the trial court expressed its dissatisfaction with the City, stating in a letter:

> The Plaintiffs requested some cash register receipts and the Court finds that the City did produce copies of all cash receipts that they had in their possession. While the Court finds the City's failure to keep all receipts is questionable in light of the City's duty to maintain authentic and proper records, it does not find that the City's failure was intentional or deliberate to violate the Texas Public Information Act.
>
> What the Court does find objectionable is the City's apparent method of providing information on a piecemeal basis and/or pretending to answer a request with their own interpretation of what something may mean without asking for an explanation from the citizen requesting the information. Every citizen has the right to ask about each and every public function and the City should be fully open and agreeable to answer a citizen without placing any obstacles or barriers.

The court concluded:

> In light of all of the above and this Court having heard so many Open Meeting and Public Information cases regarding the City, the Court suggest[s] for the City to review its policies and perhaps modify some of these procedures and require some of its employee and most of the elected and/or appointed officials to attend one of the many seminars which are available on these particular topics. The Court further suggests that the City go a step further and provide in house workshops to make sure that everybody is complying with our Texas Public Information and Open Meeting Laws.