# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00731-CV

### In re China Charles

## ORIGINAL PROCEEDING FROM BELL COUNTY

## M E M O R A N D U M   O P I N I O N

Relator China Charles filed a petition for writ of mandamus complaining of the trial court's temporary order related to child custody. *See* Tex. R. App. P. 52. As explained below, we conditionally grant mandamus relief. *See id.* 52.8(c).

## Standard of Review

A party seeking mandamus relief must show that the trial court clearly abused its discretion and that the party has no adequate remedy by appeal. *In re Southwestern Bell Tel. Co., L.P.*, 226 S.W.3d 400, 403 (Tex. 2007) (orig. proceeding) (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding)); *In re Serio*, No. 03-14-00786-CV, 2014 WL 7458735, at *1 (Tex. App.—Austin Dec. 23, 2014, orig. proceeding) (mem. op.). Because a trial court's temporary orders are not appealable, mandamus is an appropriate vehicle for a challenge to such an order. *See Little v. Daggett*, 858 S.W.2d 368, 369 (Tex. 1993) (orig. proceeding) (per curiam); *Serio*, 2014 WL 7458735, at *1 (citing *In re Derzapf*, 219 S.W.3d 327, 334-35 (Tex. 2007) (orig. proceeding) (per curiam)). We will not grant extraordinary relief unless the temporary order

amounted to an abuse of discretion under section 156.006(b) of the family code. *Serio*, 2014 WL 7458735, at *1.

Under section 156.006, when a petition seeking modification of an order related to the parent-child relationship is pending, the trial court "may not render a temporary order" that changes which parent has the right to designate the child's primary residence unless the temporary order is in the child's best interest and, in relevant part, "the order is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development." Tex. Fam. Code § 156.006(b). Further, a person who seeks a temporary order changing that designation must attach to his motion an affidavit

> that contains facts that support the allegation that the child's present circumstances would significantly impair the child's physical health or emotional development. The court shall deny the relief sought and decline to schedule a hearing on the motion unless the court determines, on the basis of the affidavit, that facts adequate to support the allegation are stated in the affidavit.

*Id*. § 156.006(b-1).

## Factual and Procedural Summary

Charles and real party in interest Michael Winfree are the parents of C.S.C., a daughter who was born in August 2013. In January 2014, the trial court signed an order governing child support and the child's custody, giving Charles the right to determine C.S.C.'s primary residence and establishing a visitation schedule for Winfree. In January 2016, the trial court signed an order modifying the original order, making findings related to Winfree's child-support obligations

2

and minor changes to his visitation arrangements. In a note hand written by the trial court, the order stated that C.S.C.'s primary residence would be kept "in Bell or any contiguous county."

In August 2017, Winfree filed a petition to modify, seeking the right to designate C.S.C.'s primary residence. Winfree alleged that the circumstances of the child or one of the parents had materially and substantially changed and that the current order was unworkable because Charles had refused to comply with the child-possession exchanges and because "it has become more and more obvious for a number of additional reasons that it is not in the best interest of [C.S.C.] for [Charles] to have primary custody." Winfree further alleged that Charles had withdrawn the child from day care and had refused to tell him who was currently providing childcare and asserted that the requested changes were in C.S.C.'s best interest. The affidavit attached to Winfree's petition recited the same assertions but did not provide any specific factual allegations.

The trial court held a hearing in September 2017, and both Winfree and Charles appeared pro se.[1] At the conclusion of the hearing, the court signed a temporary order allowing Winfree to designate the child's primary residence. It is from this order that Charles seeks relief.

At the hearing, Winfree testified that Charles had moved to Arlington, violating the limitation that she stay in Bell County or a contiguous county, that Charles had hidden the child from Winfree, and that Charles would not tell Winfree where C.S.C. was or let him speak to her. Winfree testified that in early August, Charles had sent him a text message two hours before his Thursday night visitation informing him that she was moving to Arlington and that the child would be starting school there the following Monday. Winfree testified that he texted back to ask where the child

---

[1] Both parties are represented by counsel in this proceeding.

would be living and what school she would attend and that Charles did not answer those questions and instead told him to refer to the court order. Winfree answered several questions from the trial court, stating that he had been regularly exercising his visitation rights since the modified order in 2016, including the full month of July 2017, just before Charles moved to Arlington. He had not been able to have visitations since Charles moved and he testified that Charles's withholding of C.S.C. ruined a surprise birthday party he had planned for C.S.C. on one of his weekend visits. Winfree testified that Charles had not responded to his texts and phone calls since moving to Arlington and that, as of the time of the hearing, he still did not have C.S.C.'s address or the name of her school.

Winfree also testified that the child was "not being well taken care of" by Charles. Winfree offered into evidence photographs of the child's body, which he said was often dirty; of the child's hair, which he said was frequently dirty and sometimes matted; of her underwear, which he described as soiled; and of her shoes and other garments, which he described as being too small and having holes in them.[2] Winfree said that he and his wife would wash and style C.S.C.'s hair during their weekend visits and that her hair was often in the same style when she returned two weeks later. Winfree's aunt similarly testified that when C.S.C. comes for a visit, she is "not kept," her "hair looks horrible," and her clothes are in bad condition. She testified that C.S.C. has a beautiful room

---

[2] We recite Winfree's descriptions of the relevant photos and other exhibits (such as text message exchanges and affidavits by third-parties) because the actual exhibits were not included in Charles's mandamus record. Winfree notes that the exhibits were not included in the record, asserting that they supported the trial court's decision, and asks us to abate the proceeding until Charles files a "pertinent and complete record." However, Winfree was free to supplement the record himself, if he believed the evidence would be sufficient to support the trial court's order, but he did not do so.

and clothes at Winfree's house and that his wife washes and braids C.S.C.'s hair as soon as she arrives. Winfree's aunt believed C.S.C. would be "better off" residing with Winfree and his wife.

Finally, Winfree testified that C.S.C. had had "a bad case of scabies" in December 2016. Winfree described some of his photographs as showing the scabies and testified that he had paid for medication prescribed to address scabies. Charles questioned Winfree about the alleged scabies and asked if he had taken the child to the doctor, and he said he had not. For her part, Charles testified that it turned out C.S.C. "actually never had" scabies and that she was "misdiagnosed" as having them by her primary physician. Charles testified that when the marks reappeared after C.S.C. played outside, she brought C.S.C. to an emergency room, where "the emergency physician told me that it was [a] misdiagnosis and that I needed—I should change her doctor." Charles explained that C.S.C. was "allergic to mosquito bites so when she gets bitten, it swells up," and she testified that the photos provided by Winfree showed bug bites, not marks consistent with scabies.

Charles testified that, "as far as torn clothes, I don't have any torn clothes." She testified that Winfree usually returns C.S.C. wearing the same clothing she left in, and that she has seen Winfree and his wife change C.S.C. into different clothes in front of Charles's house at the beginning of a visitation. Charles did not know how C.S.C.'s clothing came to have holes and said, "The only thing that I can think of is them changing her in the vehicle." She also alleged that recently Winfree sent C.S.C. home in two right shoes, would not answer Charles's phone call about it, and then texted that Charles had sent her in two right shoes. She said "everything that he's trying to paint on me is actually what he do [sic]." Charles did not believe Winfree was abusing or neglecting C.S.C. but did believe he was trying to make it look like Charles was a "horrible parent."

5

Charles testified that she informed Winfree and the attorney general's office of her move to Arlington about a week before she relocated and that she was advised by the attorney general's office that the modified order did not restrict her residence "to Bell County which was incorrect." She asked the trial court "to forgive me on my ignorance of that portion of it but it was not intentional." She explained that she left Winfree a voicemail about the upcoming move because he would not pick up her phone calls. Charles testified that she did not text Winfree an address when he asked because she "didn't have a physical address at the time. I was moving in with family and I was waiting [to] sign paperwork for my—my own address." She testified that she called later and left Winfree a voicemail with the address. She further testified that she had not denied Winfree visitation or interfered with his phone calls to the child, saying, "He's never called my phone. He has stopped communications a long time ago." Charles testified that many of her communications with Winfree were over the phone or via voicemail, whereas Winfree testified that Charles refused to communicate other than in texts.[3]

At the conclusion of the hearing, the trial court stated that it was making "temporary orders pending further hearing and further orders" and that under those temporary orders, Winfree would have the right to designate C.S.C.'s primary residence. The court stated that because Charles had "chosen to leave the area," she would have to pick up and drop off the child for her visitations. The trial court did not state any findings of fact or refer to the standards set out in section 156.006.

---

[3] For instance, Winfree testified that Charles had refused to provide him with information about C.S.C.'s medical insurance coverage, but Charles testified that she tried to hand him the insurance card but that Winfree walked away and refused it and also refused to get it from the doctor's office when Charles left him a copy. She said, "He wanted to paint a picture that I was denying him of it."

**Discussion**

First, we agree with Charles that the trial court abused its discretion in holding a hearing based on Winfree's motion to modify and accompanying affidavit. Section 156.006 provides that a trial court must deny relief and refuse to schedule a hearing on a motion to modify if the party seeking the change does not provide an affidavit setting out "facts that support the allegation that the child's present circumstances would significantly impair the child's physical health or emotional development." Tex. Fam. Code § 156.006(b-1). Winfree's motion and affidavit did not refer to the requirements of section 156.006, make any allegations that the present circumstances would significantly impair C.S.C.'s well-being, or provide any factual basis for inferring such a fact. The motion and affidavit simply said that the parties' circumstances had materially and substantially changed, that Charles had violated the trial court's earlier order related to visitation, and that it had "become more and more obvious for a number of additional reasons that it is not in the best interest of [C.S.C.]" for Charles to designate the child's primary residence. Thus, the motion did not make the allegations required by section 156.006(b-1), much less provide sufficient facts adequate to support such allegations, and the trial court therefore erred in holding a hearing on Winfree's motion for a temporary order changing C.S.C.'s primary residence. *See id.*

Further, although we acknowledge that holding a hearing on an insufficient affidavit may be harmless error if the evidence provided at the hearing supports an allegation of significant impairment, *see, e.g.*, *In re A.L.W.*, 356 S.W.3d 564, 566-67 (Tex. App.—Texarkana 2011, no pet.); *In re A.C.S.*, 157 S.W.3d 9, 18-19 (Tex. App.—Waco 2004, no pet.), based on the evidence produced in this hearing, the court abused its discretion in issuing the temporary

7

order taking from Charles the right to designate C.S.C.'s primary residence. "Texas courts have recognized that the 'significant impairment' standard in section 156.006(b)(1) is a high one," and that standard requires "evidence of bad acts that are more grave than violation of a divorce decree or alienation of a child from a parent." *Serio*, 2014 WL 7458735, at *2 (citing *In re Payne*, No. 10-11-00402-CV, 2011 WL 6091265, at *2 (Tex. App.—Waco Dec. 2, 2011, orig. proceeding) (mem. op.); *In re C.S.*, 264 S.W.3d 864, 874-75 (Tex. App.—Waco 2008, no pet.)). In rendering its temporary order, the trial court did not make such findings, nor did it refer to the section 156.006(b-1) standards in the hearing.

Implying all necessary findings in favor of the trial court's temporary order, the evidence presented at the hearing does not rise to the level that could support the order under section 156.006(b)(1). *See Serio*, 2014 WL 7458735, at *1-2 ("The record presented here does not contain explicit findings supporting the temporary order under section 156.006 of the Family Code, nor does it contain evidence of relator's serious acts or omissions from which we may imply the necessary findings that the children's emotional development, in their present circumstances, would be significantly impaired."). Taking as true Winfree's evidence that Charles had interfered in Winfree's visitation and communications with C.S.C., that the child frequently wore dirty, ill-fitting, or damaged clothes and shoes, and that her hair, body, and underwear were frequently dirty, unkempt, and soiled, that evidence does not rise to the level of showing "significant impairment." *See In re Kyburz*, No. 05-15-01163-CV, 2015 WL 6935912, at *2 (Tex. App.—Dallas Nov. 10, 2015, orig. proceeding) (mem. op.) (evidence that CPS had investigated whether children were dirty and had bugs in their hair, that father witnessed children being disheveled and wearing clothes that were too

8

small, and that mother might be forced to move was insufficient to show current circumstances significantly impaired children's health and well-being); *Serio*, 2014 WL 7458735, at \*1-2 (even if evidence supported implied finding that mother had attempted to alienate children from father and prevent them from having relationship with father, such evidence would not satisfy significant-impairment standard); *In re Rather*, No. 14-11-00924-CV, 2011 WL 6141677, at \*2 (Tex. App.—Houston [14th Dist.] Dec. 8, 2011, orig. proceeding) (mem. op.) (evidence that father's relationship with son might be adversely affected by mother's move, that mother's home was messy and unsanitary, that child was not always appropriately dressed for weather, and that child was sometimes not properly supervised was insufficient to show circumstances that significantly impaired child's health or development). Nor does a "bad case of scabies," which allegedly occurred about eight months before Winfree filed his petition for modification, amount to evidence that C.S.C.'s "*present circumstances* would significantly impair" her health and well-being.[4]  *See* Tex. Fam. Code § 156.006(b-1) (emphasis added). Without such evidentiary support, the trial court abused its discretion in rendering the temporary order naming Winfree as the parent with the right to designate C.S.C.'s primary residence.

## Conclusion

The trial court abused its discretion in holding a hearing on Winfree's motion, which did not satisfy the requirements of section 156.006(b-1). The court further abused its discretion in

---

[4] We note that Winfree did not present any evidence about scabies in general, such as what causes scabies, how they are transmitted and how C.S.C. might have come to have them, or whether they pose any long-term health issues.

rendering the temporary order giving Winfree the right to designate C.S.C.'s primary residence.[5] We conditionally grant Charles's requested relief and direct the trial court to vacate its temporary order of September 13, 2017. Writ will issue only in the unlikely event that the trial court does not act in accordance with this opinion.

_____

David Puryear, Justice

Before Justices Puryear, Field, and Bourland

Filed: December 1, 2017

---

[5] We disagree with Winfree's contention that the "substance of the temporary order [did not] change the person with the exclusive right to designate primary residence" and instead merely "enforced the status quo under the prior order by maintaining the child's residence in Bell County." The temporary order did not, for example, provide that Charles could maintain C.S.C.'s primary residence if she relocated back to Bell County. It explicitly switched the designation from Charles to Winfree, the exact change governed by section 156.006, depriving Charles of any discretion related to the designation of C.S.C.'s primary residence. *See In re Serio*, No. 03-14-00786-CV, 2014 WL 7458735, at *2 (Tex. App.—Austin Dec. 23, 2014, orig. proceeding) (mem. op.) (after mother moved child about 200 miles away, trial court issued temporary order allowing father to designate primary residence; "While we recognize the district court's desire to maintain the status quo pending an anticipated hearing on the competing motions for modification, issuance of the temporary order on this record was an abuse of the district court's discretion given the explicit findings required by section 156.006(b) to justify such an order."); *In re Davila*, 510 S.W.3d 455, 458 (Tex. App.—San Antonio 2013, orig. proceeding) (if temporary order deprives custodial parent of any discretion in determining child's primary residence, order has effect of changing designation of person with exclusive right to designate primary residence).