55 S.W.3d 147 (2001)
In the Interest of J.R.P., M.C. and R.P., Jr., Minor Children.
No. 13-99-811-CV.
Court of Appeals of Texas, Corpus Christi.
August 2, 2001.
*148 John A. George, Julie Hale, Rodney F. Durham, Joyce M. Heller, Victoria, for appellants.
M.P. "Dexter" Eaves, District Attorney, Michael M. Kelly, Assistant District Attorney, Victoria, for appellee.
Before Chief Justice VALDEZ and Justices HINOJOSA and RODRIGUEZ.

OPINION
RODRIGUEZ, Justice.
This is an appeal of a child custody case. Two appellants appeal on separate *149 grounds. Appellant Monica, the children's mother, appeals from an order terminating her parental rights to her three children. Appellant Joe, the children's grandfather, appeals from an order granting permanent managing conservatorship of the children to the Texas Department of Protective and Regulatory Services (TDPRS). We affirm.

Appellant Monica
On September 22, 1995, TDPRS filed its original petition in suit affecting the parent-child relationship. TDPRS alleged Monica knowingly placed and allowed the children to remain in conditions that endangered their physical and emotional well-being. See TEX. FAM. CODE ANN. § 161.001 (Vernon Supp.2001). Specifically, TDPRS alleged that Monica allowed her boyfriend to beat the children. TDPRS initially requested temporary managing conservatorship of the children. The petition set out that reasonable efforts would be made to reunify the family. If that was not possible, however, TDPRS requested termination of parental rights and appointment as managing conservator. On October 6, 1995, the trial court entered a temporary order granting TDPRS temporary managing conservatorship of the children.
On December 4, 1995, Monica appeared at a status hearing. The trial court advised Monica:
unless [she was] willing and able to provide the children with a safe environment within the reasonable period of time specified in the plan, [her] parental and custodial duties and rights may be subject to restriction and the children may not be returned to [her] until satisfactory completion of the plan.
Additional hearings were conducted; but TDPRS maintained temporary managing conservatorship because Monica failed to show any significant improvement towards meeting the conditions set forth in the family service plan.[1]
Monica filed an affidavit of indigency and request for appointed counsel in May 1997. On May 23, 1997, the trial court appointed counsel to represent Monica.[2] Eighteen months later, on November 1, 1999, and after subsequent reports were filed, Monica's parental rights were terminated and the court granted permanent managing conservatorship of the children to TDPRS.
By one point of error, Monica contends the trial court committed reversible error by not appointing counsel immediately after TDPRS filed its original petition. Monica alleges section 107.103 of the Texas Family Code requires such appointment. Tex. Fam. Code Ann. § 107.103 (Vernon Supp.2001).
Section 107.013(a)(1) provides that the court shall appoint an attorney to represent an indigent parent who opposes a suit involving the termination of their parent-child relationship. See id. Notably, this section does not specify a time frame for appointment of counsel. Rather, it merely states that the court shall appoint an attorney to an indigent person who responds in opposition to the termination. See id. This is in sharp contrast to other sections of the family code requiring immediate appointment of counsel when a suit affecting the parent-child relationship *150 has been filed. See, e.g., Tex. Fam. Code Ann. § 107.001(b) (Vernon Supp.2001) (requiring appointment of guardian ad litem for the child in a termination proceeding "immediately after the filing of the petition but before the full adversary hearing"); Tex. Fam. Code Ann. § 107.012 (Vernon 1996) (requiring immediate appointment of counsel to represent children); Tex. Fam. Code Ann. § 161.003(b) (Vernon 1996) (requiring immediate appointment of counsel to represent a mentally ill parent).
While several courts have confirmed the mandatory nature of section 107.013(a)(1), none have taken up the question of when appointment of counsel must occur. See e.g., In re T.R.R., 986 S.W.2d 31, 37 (Tex. App.Corpus Christi 1998, no pet.); In re B.R., 950 S.W.2d 113, 115-16 (Tex.App.-El Paso 1997, no writ); Ybarra v. Tex. Dept. of Human Svcs., 869 S.W.2d 574, 580 (Tex.App.-Corpus Christi 1993, no writ); Odoms v. Batts, 791 S.W.2d 677 (Tex. App.San Antonio 1990, no writ). The courts that have addressed this issue have viewed it more in terms of whether the party was provided reasonable access to counsel. See In re B.R., 950 S.W.2d at 115-16 (holding that record was devoid of evidence that party was denied reasonable access to counsel where attorney had been appointed for inmate over three years prior to time of trial but where inmate contends that he only conferred with attorney in person for 1½ hours immediately preceding the trial); cf. Ybarra, 869 S.W.2d at 580 (holding that trial court did not err in failing to appoint counsel where party did not request appointed counsel and was represented by retained counsel at trial).
In this case, TDPRS filed its petition of termination on September 22, 1995. Monica did not request counsel or claim that she was indigent when the original petition was filed. She did not file her affidavit of indigency or request appointment of counsel until May 1997. Significantly, the court appointed Monica counsel immediately upon her request and notification of indigency. On September 3, 1997, she filed her answer opposing the suit. The final hearing on the termination of Monica's parental rights was held on December 7, 1998, approximately eighteen months after Monica had been appointed counsel. After hearing testimony and receiving evidence, the trial court took the matter under advisement. On March 18, 1998, some twenty-two months after counsel had been appointed, the court signed the judgment terminating Monica's parental rights.
Because Monica was appointed counsel after she filed her notice of indigency and was represented for eighteen months prior to the termination of her parental rights, we conclude that the trial court complied with the requirements of section 107.013 of the Texas Family Code. See In re B.R., 950 S.W.2d at 116 (Tex.App.-El Paso 1997, no writ). We decline to create a precise requirement as to when counsel must be appointed in a termination proceeding.
Monica further contends the trial court's failure to appoint her counsel immediately after TDPRS filed its original petition violates her constitutional rights. In Lassiter v. Dept. of Social Svcs. of Durham Co., 452 U.S. 18, 24-32, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), the Supreme Court concluded that although no absolute right to counsel exists for an indigent parent, under the Due Process Clause of the Fourteenth Amendment, fundamental fairness may require the appointment of counsel in a termination proceeding. Lassiter, 452 U.S. at 31-32, 101 S.Ct. 2153. This Court recognizes that the right of a mother to parent her child is fundamental and implicit in the Constitution, and is subject to strict scrutiny when the relationship is infringed upon. See Holick v. Smith, 685 *151 S.W.2d 18, 20 (Tex.1985). However, the Supreme Court, in Lassiter, refused to conclude that the Constitution requires the appointment of counsel in every parental termination hearing. Lassiter, 452 U.S. at 31, 101 S.Ct. 2153.
The record reflects that Monica did not request counsel at the time the original petition was filed and upon request, received appointed counsel immediately upon her request, and was represented by appointed counsel for approximately eighteen months prior to the final termination hearing and twenty-two months before the judgment terminating her parental rights was signed. Based on the facts and our analysis set out above, we conclude the trial court did not violate Monica's constitutional rights by not immediately appointing counsel after the filing of the original petition.
Appellant Monica's sole issue is overruled.

Appellant Joe
On July 27, 1998, Joe filed a petition of intervention. The petition identified Joe as the biological grandfather of the children. The petition proposed that in the event Monica's parental rights were terminated, it would be in the best interest of the children that Joe be appointed sole managing conservator of the children. Alternatively, the petition proposed that it would be in the best interest of the children that Joe be granted reasonable access to his grandchildren. On November 1, 1999, the trial court named TDPRS permanent managing conservator, and granted Joe access to his grandchildren.
By his first two issues, Joe contends that the trial court abused its discretion in appointing TDPRS as the permanent managing conservator of the children. Joe challenges the sufficiency of the evidence to support the court's finding that the appointment of TDPRS was in the best interest of the children. Joe argues the trial court failed to take into account evidence that would have concluded that the best interests of the children would be better served by appointing Joe as permanent managing conservator of the children.
In family law cases involving custody issues, we review a trial court's best interest findings for an abuse of discretion. See In re Jane Doe 2, 19 S.W.3d 278, 281 (Tex.2000). The trial court has wide latitude in determining the best interests of a minor child. See Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex.1982) (citations omitted). We will reverse the judgment of the trial court only when it appears from the record as a whole that the court has abused its discretion. See id.; Burkhart v. Burkhart, 960 S.W.2d 321, 323 (Tex.App.-Houston [1st Dist.] 1997, writ denied) (trial court's decision regarding custody, control, and possession of child reviewed under abuse of discretion standard). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex.1990). An abuse of discretion does not occur as to factual matters as long as some evidence of a substantive and probative character exists to support the trial court's decision. See Holley v. Holley, 864 S.W.2d 703, 706 (Tex.App.-Houston [1st Dist.] 1993, writ denied). A trial court abuses its discretion as to legal matters when it fails to analyze or apply the law correctly. See Walker v. Packer, 827 S.W.2d 833, 840 (Tex.1992).
Appellant relies on the factors addressed in Holley v. Adams, 544 S.W.2d 367 (Tex.1976), as the principal balancing factors used to determine the best interest of the child. However, in 1993, the Texas State Legislature codified Holley, incorporating additional factors for the court to *152 consider when determining the best interest of the child.[3]See Act of June 19, 1993, 73rd Leg., R.S., ch. 842, 1993 Tex. Gen. Laws 3318 (amended 1995) (current version at Tex. Fam. Code Ann. § 263.307 (Vernon Supp.2001)). Importantly, factors seven and eight in section 263.307 allow the trial court to consider whether a potential family for placement has a history of physical and substance abuse, and whether others that have access to the home pose a physical threat to the children. See Tex. Fam. Code Ann. § 263.307(b)(7), (8) (Vernon Supp.2001).
A review of the record reveals that Joe answered numerous questions pertaining to his history of alcohol use and to the types of individuals who might have access to the children. Joe confirmed he had a criminal history record that stemmed from his chronic alcohol use. Joe's common-law wife answered questions that confirmed certain individuals who have abusive and criminal histories might have access to Joe's home and the children. The evidence delineated above supporting the seventh and eight factors of section 263.307 of the family code is sufficient competent evidence to support the trial court's determination that the best interest of the children would be served by appointing TDPRS managing conservator. We conclude, therefore, the trial court did not abuse its discretion in awarding custody of the children to TDPRS. Joe's first and second issues are overruled.
In his third issue, Joe claims the trial court abused its discretion by appointing TDPRS as permanent managing conservator, since TDPRS failed to overcome the presumption that a grandparent should be given custody in a suit between non-parents. Section 161.207 of the Texas Family Code states that if the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court shall appoint a suitable, competent adult, TDPRS, a licensed-child placing agency, or an authorized agency as managing conservator of the child. Tex. Fam. Code Ann. § 161.207 (Vernon Supp. 2001). This language does not specifically include grandparents and allows the trial court to balance the best interests of the children in appointing managing conservators. See Wimpey v. Wimpey, 662 S.W.2d 680, 682 (Tex.App.-Dallas 1983, no writ) (language in section 14.01 of the Texas Family Code, now section 161.207, is consistent with the policy of the family code requiring the trial court to look at the best interest of the children in appointing managing conservators). There is no support in this statute, nor does Joe provide us with any authority for his contention that there is a presumption that a grandparent should be given custody in a suit between non-parents. See Tex. R. App. P. 38.1(h). Thus, the trial court did not abuse its discretion by appointing TDPRS permanent managing conservator for the children. Joe's third issue is overruled.
In his fourth issue, Joe contends the trial court abused its discretion in appointing the TDPRS as permanent managing conservator of the children where the record reflects that his criminal history in the social study prepared by TDPRS was materially false. We conclude, however, Joe's fourth point lacks merit because he testified and affirmed the accuracy of his criminal history. The trial court did not abuse its discretion in appointing TDPRS permanent managing conservator for the children. Joe's fourth issue is overruled.
*153 We AFFIRM the judgment of the trial court.
NOTES
[1] As part of the family service plan, Monica was to attend counseling on a regular basis; maintain a safe, stable, clean home for her children; and attend parenting classes.
[2] We note that neither the affidavit of indigency nor the order appointing counsel appear in the record. Because neither the documents nor the dates are in dispute we will accept them as having been established. See Tex. R. App. P. 38.1(h).
[3] Section 263.307 of the Texas Family Code outlines thirteen factors that a court should consider when determining the best interest of a child. Tex. Fam. Code Ann. § 263.307 (Vernon Supp.2001).