Affirmed and Memorandum Opinion filed January 25, 2007








Affirmed
and Memorandum Opinion filed January 25, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00137-CV

____________

 

IN THE INTEREST OF H.G.H., A MINOR
CHILD

 



 

On Appeal from the 300th
District Court

Brazoria County, Texas

Trial Court Cause No. 30032

 



 

M E M O R A N D U M  O P I N I O N

Appellant, Dwight Holmes, appeals from the trial court=s judgment
terminating his parental rights to his daughter H.G.H. and appointing Brazoria
County Children=s Protective Services (ACPS@) sole managing
conservator of H.G.H.  In five issues, appellant challenges the legal and
factual sufficiency of the evidence underlying the findings in the termination
order, and the trial court=s decision to appoint CPS managing
conservator of H.G.H., rather than the child=s paternal
grandmother.  We affirm.

Factual and Procedural Background








Appellant is the father of H.G.H, a female child born in
February of 2004.  At the time of H.G.H.=s birth, appellant
was incarcerated in Brazoria County for possession of a firearm.  During the
first six months of her life, H.G.H. resided with her mother, Angelia Gaston,
and her four year-old sister, A.G.H.  H.G.H. is the youngest of Gaston=s four children. 
Gaston has an extensive history with CPS, dating back to 2001 and including
allegations of drug use, mental instability, and neglectful supervision. 
Gaston=s children were
removed from her custody on six prior occasions, and Gaston=s parental rights
to her two oldest children were terminated prior to the birth of H.G.H. 

On April 6, 2004, CPS received a referral alleging Gaston
had taken Xanax and fallen asleep on the couch in her home, leaving H.G.H. and
A.G.H. unsupervised.  CPS caseworker Jennifer Gallion contacted Gaston via
telephone on April 12.  Gaston stated she was not willing to participate in
family-based services; however, she was willing to meet with Gallion.  During
April through July of 2004, Gallion visited Gaston=s residence on at
least seven occasions.  Some of the visits were scheduled, and some were
unannounced.  H.G.H. was always present when Gallion visited Gaston=s home. Gallion
later testified that Gaston=s home was always clean when she visited,
and H.G.H. was not in immediate danger.  Gallion saw no indication appellant
was parenting H.G.H., or that H.G.H. was living with appellant. 

Gallion made four visits to Gaston=s residence during
May and June of 2004.  Gaston verbally agreed to participate in limited
family-based services, including drug and alcohol assessment, in-home training,
and monitoring of her prescription medication for bipolar disorder.  However,
Gaston failed to participate in voluntary services.  During late May, Gaston=s third child,
A.G.H., became the subject of a custody dispute between Gaston and A.G.H.=s father, Phillip
Harris.  Gaston became increasingly frustrated with CPS and, during an in-home
visit on June 10, Gaston told Gallion that she was going to stop taking her
bipolar medication because CPS was involved in her life.  Gallion returned to
Gaston=s residence on
June 16 and found A.G.H. unsupervised in the courtyard of the apartment
complex.  When Gaston refused to discuss A.G.H.=s lack of
supervision, Gallion initiated a formal CPS investigation.  








On July 7, 2004, A.G.H.=s father was
granted temporary custody of A.G.H.  H.G.H. continued to reside with Gaston. 
Gallion visited Gaston=s residence three times during the month
of July.  On July 19, Gaston signed a written agreement to participate in
family services.  After a subsequent visit by Gallion on July 29, Gaston
severed all contact with Gallion.  CPS staffed the case for non-emergency
removal of H.G.H.  On August 9, 2004, Gallion executed an affidavit describing
her contacts with Gaston.  In her affidavit, Gallion testified she made contact
with Gaston on ten occasions, and Gaston was hostile and uncooperative on eight
of those ten occasions.  Gallion testified Gaston exhibited mood swings, mental
instability, and inappropriate behavior.  Gallion also described Gaston=s history with CPS
and the fact that A.G.H. had been left unsupervised in the courtyard of the
apartment complex.  Gallion recommended H.G.H. be placed in protective custody
based on Gaston=s unwillingness to cooperate with CPS and
conduct which continued to place H.G.H. at substantial risk of harm. 








On August 10, 2004, Texas Department of Family &
Protective Services (ADFPS@) filed its
original petition for protection of a child, conservatorship, and termination
of the parental rights of appellant and Gaston to H.G.H.  On August 12, Gallion
spoke to appellant for the first time.  Although appellant had been released
from jail on or about April 1, 2004, Gallion had been told on numerous
occasions that appellant was still incarcerated.  When Gallion spoke to
appellant on August 12, she assumed appellant had just been released.[1]
During their conversation on August 12, appellant told Gallion he did not know
where H.G.H. was, and he was concerned she had been given away.  Appellant
provided his contact information, consisting of his mother=s address in
Angleton and a Houston telephone number.  On August 19, appellant called
Gallion and stated that Gaston had left H.G.H. and all of her possessions with
appellant.  

On August 24, 2004, the trial court issued temporary orders
appointing CPS temporary managing conservator of H.G.H.  The trial court
ordered appellant to (1) submit to a psychological evaluation, (2) successfully
complete parenting classes, (3) successfully complete counseling, (4) submit to
drug and alcohol abuse assessment, (5) remain drug and alcohol free during the
pendency of the termination suit, (6) maintain a safe and stable home
environment, (7) comply with the terms of any service plan filed during the
pendency of the termination suit, and (8) pay child support in the amount of
one hundred dollars per month.  

During that same month, August of 2004, appellant committed
burglary in Harris County.  Appellant was incarcerated on January 3, 2005.  He
plead guilty to burglary of a habitation and remained incarcerated throughout
the underlying termination suit and submission of this case on appeal.  Prior
to his incarceration, appellant submitted to a psychological evaluation, but
failed to complete any of the other court-ordered services.  Appellant has an
extensive criminal history dating back to 1996 and including arrests for
possession of a controlled substance (1996), possession of marijuana (2003),
possession of a firearm (2003), evading arrest (2004), and burglary (2005). 








During late 2004, H.G.H.=s paternal
grandmother, Sherrill Mullins, became involved in the termination proceeding. 
Prior to August of 2004, Mullins had no relationship with H.G.H.  Mullins later
testified she had not bonded with H.G.H. because she did not know if appellant
was H.G.H.=s biological father.  In October of 2004, after CPS
had been appointed temporary managing conservator, Mullins attended a family
group conference and requested a home study.  CPS subsequently evaluated
Mullins= life
circumstances and ability to care for H.G.H.  On January 25, 2005, CPS filed a
Kinship Caregiver Home Assessment report recommending H.G.H. not be placed with
Mullins due to concerns over Mullins= physical health
and financial difficulties.  In June of 2005, DNA testing confirmed appellant
is the biological father of H.G.H.  On July 26, 2005, Mullins intervened in the
termination suit and petitioned the court to be named managing conservator of
H.G.H.  

The termination suit was tried without a jury on January
30, 2006.  CPS caseworkers Jennifer Gallion, Elizabeth Shreeves, and Carolyn
Davis testified on behalf of DFPS.  Gallion testified about her increasing
concerns over Gaston=s behavior, and appellant=s lack of
involvement with H.G.H. during the months prior to August of 2004.  Shreeves
testified appellant visited H.G.H. four times after CPS was appointed temporary
managing conservator, and appellant failed to pay child support or complete his
court-ordered family services.  Davis testified that during her involvement
with H.G.H.=s case, appellant had no contact with H.G.H. and
failed to complete any of his court-ordered services.  

Appellant testified he did not want custody of H.G.H. after
being released from jail; rather, he wanted Sherrill Mullins to have custody of
the child.  Mullins gave testimony regarding her involvement with H.G.H. and
her desire to be appointed managing conservator.  H.G.H.=s foster mother
testified H.G.H. had bonded with her foster family and is developing normally
in her current environment.  Angelia Gaston did not appear in person, but did
appear by and through her legal counsel. 

On February 6, 2006, the trial court signed an order
terminating the parental rights of appellant and Gaston to H.G.H. and
appointing CPS sole managing conservator of H.G.H.  The trial court found by
clear and convincing evidence that appellant endangered the physical or emotional
well-being of H.G.H., and termination of appellant=s parental rights
was in H.G.H.=s best interest.  See Tex. Fam. Code Ann. ' 161.001(1)(D)B(E),(2) (Vernon
2002). 

Termination of Appellant=s Parental Rights
to H.G.H.








In his first and second points of error, appellant argues
the evidence is legally and factually insufficient to establish by clear and
convincing evidence that he (1) knowingly placed or knowingly allowed H.G.H. to
remain in conditions or surroundings which endangered her physical or emotional
well-being; or (2) engaged in conduct or knowingly placed H.G.H. with persons
who engaged in conduct which endangered her physical or emotional well-being. 
In his third point of error, appellant contends the evidence is legally and
factually insufficient to establish by clear and convincing evidence that
termination of H.G.H.=s relationship with appellant is in her
best interest.

I. Standard of
Review

The burden of proof in parental termination cases is by
clear and convincing evidence.  See Tex.
Fam. Code Ann. ' 161.001; In re J.F.C., 96 S.W.3d
256, 265B66 (Tex. 2002).  AClear and
convincing evidence@ means the measure or degree of proof that
will produce in the mind of the trier of fact a firm belief or conviction as to
the truth of the allegations sought to be established. Tex. Fam. Code Ann. ' 101.007 (Vernon
2002).

When reviewing the legal sufficiency of the evidence under
this standard, we look at all the evidence in the light most favorable to the
finding Ato determine
whether a reasonable trier of fact could have formed a firm belief or
conviction that its finding was true.@  In re J.F.C.,
96 S.W.3d at 266.  We must assume the factfinder resolved disputed evidence
in favor of its finding if a reasonable factfinder could do so.  Id.  We
must disregard all evidence that a reasonable factfinder could have disbelieved
or found to be incredible.  Id.  However, because of the heightened
standard, we must also be mindful of any undisputed evidence contrary to the finding
and consider that evidence in our analysis.  See id.  (ADisregarding
undisputed facts that do not support the finding could skew the analysis of
whether there is clear and convincing evidence.@).  If, after
conducting our review, we determine that a reasonable factfinder could not form
a firm belief or conviction that the allegations were true, then we must
conclude the evidence is legally insufficient.  Id. 








When reviewing a factual sufficiency challenge, the
analysis is slightly different because we must consider all the evidence
equally, both disputed and undisputed.  Id.  The court of appeals should
consider whether the disputed evidence is such that a reasonable factfinder
could not have resolved the disputed evidence in favor of the finding.  Id. 
If, in light of the entire record, the disputed evidence that a reasonable
factfinder could not have credited in favor of the finding is so significant
that a factfinder could not reasonably have formed a firm belief or conviction,
then the evidence is factually insufficient.   Id.

II. Discussion

In Texas, to terminate a parent-child relationship, a trial
court must find by clear and convincing evidence that the parent engaged in one
of the grounds for termination listed in section 161.001(1) of the Texas Family
Code, and that termination is in the best interest of the child.  Tex. Fam. Code Ann. ' 161.001(1)B(2);  In re
J.L., 163 S.W.3d 79, 84 (Tex. 2005).

In this case, the trial court found two grounds supporting
termination under section 161.001(1).  First, it found appellant knowingly
placed or knowingly allowed H.G.H. to remain in conditions or surroundings
which endangered her physical or emotional well-being; and second, it found
appellant engaged in conduct or knowingly placed H.G.H. with persons who
engaged in conduct which endangered her physical or emotional well-being.  See
Tex. Fam. Code Ann. ' 161.001(1)(D)B(E).  The court
also found termination was in the best interest of the child.  Id. ' 161.001(2).  

A. Child=s Best Interest








In his third issue, appellant asserts there is legally and
factually insufficient evidence to support the trial court=s finding that
termination of appellant=s parental rights is in the best interest
of H.G.H.  The Texas
Supreme Court has always recognized the strong presumption that the best
interest of a minor is usually served by keeping custody in the natural
parents.  Wiley v. Spratlan, 543 S.W.2d 349, 352 (Tex. 1976). 
The presumption is based upon a logical belief that the ties of the natural
relationship of the parent and child ordinarily furnish strong assurance of
genuine efforts on the part of the custodians to provide the child with the
best care and opportunities possible.  Id.  The natural right which
exists between parents and their children is one of constitutional dimensions. 
Id.  In order to rebut this presumption, there must be clear and convincing
evidence of the natural parent=s present unfitness.  In re U.P.,
105 S.W.3d 222, 230 (Tex. App.CHouston [14th Dist.] 2003, pet denied). 

The Texas Supreme Court has considered the following
factors in determining whether the best interest of a child is served by
keeping the child with its natural parent: (1) the desires of the child; (2)
the present and future physical and emotional needs of the child; (3) the
present and future physical and emotional danger to the child; (4); the
parental abilities of the person seeking custody; (5) the programs available to
assist those persons seeking custody in promoting the best interest of the
child; (6) plans for the child by the individuals or agencies seeking custody;
(7) the stability of the home or proposed placement; (8) acts or omissions of
the parent that indicate the existing parent-child relationship is not
appropriate; and (9) any excuse for the parent=s acts or
omissions.  Holley v. Adams, 544 S.W.2d 367, 372 (Tex. 1976).  This list
is not exhaustive, nor is evidence required on all nine factors for the court=s finding.  Id.

With these factors in mind, we review the evidence
regarding H.G.H.=s best interest.  H.G.H. is too young to
express her desires.  However, H.G.H. has bonded with her foster parents and
eight year-old foster sister, and expresses a great deal of affection toward
them.  At the time of trial, H.G.H. had resided with her foster family for
seven months.  Her foster mother testified H.G.H. is on track developmentally,
learning to speak and engaging in educational and social activities appropriate
for a child her age.  H.G.H.=s foster mother also testified that she
and her husband have a stable home, love H.G.H., and wish to adopt her.  See
In re C.H., 89 S.W.3d 17, 28 (Tex. 2002) (holding evidence about
placement plans and adoption are relevant to the best interest).








Appellant=s life choices have left him unable to
provide a safe and stable home for H.G.H.  The undisputed evidence establishes
not only that appellant is unable to care for H.G.H., but that he has exhibited
a pattern of conduct inconsistent with the very idea of child-rearing.  See
id. (finding termination in the best interest of the child where father
failed to provide emotional or financial support and had an extensive criminal
history which continued after child=s birth). 
Appellant has been incarcerated during the majority of H.G.H.=s life for crimes
committed both before and after her birth.  His offenses include possession of
drugs, possession of a firearm, and, most recently, burglary.  Appellant=s pattern of
criminal conduct makes it likely that he will face incarceration again in the
future.  See In re S.M.L., 171 S.W.3d 472, 480 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).  Appellant has admittedly failed to maintain a stable
home environment during the time when he was not incarcerated.  CPS caseworkers
had difficulty contacting him, and he gave conflicting testimony at trial
regarding the location of his residence.   Appellant further failed to complete
the services ordered by the trial court, and failed to pay court-ordered child
support.  








Appellant=s excuses for his behavior are
unpersuasive.  Rather than taking responsibility for the burglary to which he
pleaded guilty, appellant denies having any knowledge of the crime.  Appellant
also denies having knowledge of the trial court=s order to pay
child support, even though he was present when the court issued its order.  Regarding
his failure to complete court-ordered services, appellant argues he could not
have completed the services because he was in jail.  Appellant was ordered to
perform services in temporary orders issued by the trial court on August 24,
2004.  Appellant was incarcerated on January 3, 2005.  Elizabeth Shreeves, the
CPS caseworker assigned to H.G.H. from September 2004 to July 2005, testified
it was Avery possible@ for appellant to
have gotten more involved with the services prior to his incarceration. 
Shreeves further testified she spoke to appellant during November of 2004, and
appellant stated he wanted to wait until he had stable employment before
scheduling his services.  Additionally, appellant made no effort to continue
his services while incarcerated.

Appellant has no permanent plan for H.G.H.  Appellant
testified he does not want custody of H.G.H. presently or after his release
from jail.  Rather, he wants his mother, Sherrill Mullins, to care for the
child.  In his brief, appellant argues at length that he can meet the physical
and emotional needs of H.G.H. by having the child placed with Mullins. 
However, a home study conducted by CPS recommended against placement with
Mullins due to her physical health and financial status.  The record also
indicates Mullins= interest in H.G.H. has been inconsistent
over time.  Further, Mullins testified she has not bonded with H.G.H. and
visited the child only one time during the six months preceding the trial.  

After reviewing the evidence, we conclude that the trial
court=s determination
that terminating appellant=s parental rights is in H.G.H.=s best interest is
supported by clear and convincing evidence that is legally and factually
sufficient.  We overrule appellant=s third point of
error.  

B. Dangerous Conduct Under Section 161.001(1)(E)

In his second issue, appellant argues the evidence is
legally and factually insufficient to support the trial court=s finding that
appellant engaged in conduct or knowingly placed H.G.H. with persons who
engaged in conduct which endangered her physical or emotional well-being. See
Tex. Fam. Code Ann. ' 161.001(1)(E). 








Under subsection (E), the relevant inquiry is whether
evidence exists that the endangerment of the child=s physical or
emotional well-being was the result of the parent=s conduct,
including acts or omissions.  In re J.T.G., 121 S.W.3d 117, 125 (Tex.
App.CFort Worth 2003,
no pet.).  To constitute endangerment, the parental conduct need not be
directed at the child specifically, and it need not have caused an actual
injury to the child.  Tex. Dept. Human Serv=s v. Boyd, 727 S.W.2d 531,
533 (Tex. 1987).  Rather, Aendanger@ means to expose
to loss or injury; to jeopardize.  Id.  Imprisonment, standing alone,
will not constitute endangerment.  Id.  However, if the evidence,
including imprisonment, shows a course of conduct which has the effect of
endangering the physical or emotional well-being of the child, a finding under
section 161.001(1)(E) is supportable.  Id. at 534; see also In re
D.T., 34 S.W.3d 625, 637 (Tex. App.CFort Worth 2000,
pet. denied) (holding that leaving child in foster care while jumping bail,
writing bad checks, and being incarcerated was legally sufficient to establish
endangering course of conduct).  Endangerment may include parental conduct both
before and after the child=s birth.  In re S.F., 32 S.W.3d
318, 322 (Tex. App.CSan Antonio 2000, no pet.) (holding
criminal behavior before child=s birth, coupled with misconduct during
imprisonment, was sufficient to establish a course of conduct endangering the
child); In re M.D.S., 1 S.W.3d 190, 198B99 (Tex. App.CAmarillo 1999, no
pet.) (holding sentences for burglary and sex with a minor, combined with prior
convictions of marijuana possession, established endangering course of
conduct). 

Here, the record contains evidence appellant engaged in a
course of criminal conduct  rendering him unable to provide for H.G.H.=s basic needs, and
causing him to be absent during the majority of her life.  The evidence also
shows that during the time when appellant was not incarcerated, he failed to
maintain a stable home or provide for H.G.H.=s support, even
when ordered to do so by the trial court.  








Appellant was released from jail and met his daughter for
the first time on or about April 1, 2004.  He was not incarcerated again until
after CPS was appointed temporary managing conservator of H.G.H. on August 24,
2004.  During April through August of 2004, appellant failed to establish a
stable home and did little to provide for H.G.H.=s support.  Appellant gave conflicting testimony
at trial  regarding the location of his residence after his release from jail. 
Appellant testified he lived  with JoAnn Conley, the mother of his first child,
and then moved to Houston.  Appellant later testified he did not live with
Conley, but only visited her while establishing a residence in Houston. 
Appellant also testified he lived in his girlfriend=s apartment in Houston while working
in Freeport, but the telephone line at his girlfriend=s residence did not have an answering
machine or caller I.D.  Jennifer Gallion testified that when she spoke to
appellant on August 12, he provided contact information consisting of a Houston
telephone number and his mother=s address in Angleton. 

Appellant
also testified H.G.H. resided with him Aoff and on@ after his release
from jail for the Amajority of the time@ until CPS was
appointed temporary managing conservator.  However, on cross-examination,
appellant testified he could not remember the exact date or month when he
became H.G.H.=s primary caregiver.  Gallion testified she made numerous visits to
Gaston=s residence during May to
August of 2004 and saw
no indication appellant was parenting HGH, or that HGH was living with appellant. 
Further,
appellant called CPS on August 19, 2004 and stated Gaston had left H.G.H. and
all of her possessions with him.  The statements made by appellant on August 19
contradict his testimony that he had been H.G.H.=s primary
caregiver during the preceding months. 

In its temporary orders of August 24, 2004, the trial court
appointed CPS temporary managing conservator of H.G.H. and informed appellant
that in order to avoid the termination of his parental rights he was required
to perform each of the following services: (1) submit to a psychological
evaluation, (2) successfully complete parenting classes, (3) successfully
complete counseling,(4) submit to drug and alcohol abuse assessment, (5) remain
drug and alcohol free during the pendency of the termination suit, (6) maintain
a safe and stable home environment, (7) comply with the terms of any service
plan filed during the pendency of the termination suit, and (8) pay child
support in the amount of one hundred dollars per month.








Appellant submitted to a psychological evaluation, but
failed to complete, or even initiate, any of the remaining court-ordered
services prior to his incarceration on January 3, 2005.  DFPS argues, and we
agree, that appellant is primarily interested in shirking his parental duties
by having his mother care for his child.  Appellant contacted CPS during
November of 2004 to inquire about his mother=s home study,[2]
yet he failed to take the court-ordered actions necessary for the care of his
daughter and the preservation of  his parental rights.  Appellant offers
numerous excuses for his failure to complete the court-ordered services.
However, it is clear from the record that appellant could have completed
substantially more, if not all, of his court-ordered services prior to his
current incarceration.[3] 
The fact that appellant was willing to commit burglary and risk incarceration
further demonstrates his lack of concern for the safety and security of his
child.  Appellant visited H.G.H. only four times after CPS was appointed
temporary managing conservator, and has had no contact with H.G.H. since his
incarceration in January 2005.  Appellant testified at trial that he does not
want custody of H.G.H after his release from prison.  See In re S.M.L.,
171 S.W.3d 472, 479B80 (Tex. App.CHouston [14th
Dist.] 2005, no pet.) (holding father=s lack of
demonstrated concern, repeated incarceration, and shirking of parental
responsibilities supported termination under subsection (E)).

The record also contains evidence of appellant=s criminal
conduct. Appellant was arrested for numerous crimes, both before and after
H.G.H.=s birth, including
possession of a controlled substance (1996), possession of marijuana (2003),
possession of a firearm (2003), evading arrest (2004), and burglary (2005).  In
his appellate brief, appellant makes two arguments pertaining to his criminal
history.








First, appellant argues his arrests for possession of a
controlled substance and possession of marijuana are not evidence of endangering
conduct because they both  occurred prior to the birth of H.G.H., and there is
no evidence he used illegal drugs in H.G.H.=s  presence. 
Appellant cites In re D.J.J. in support of his contention that his
drug-related conduct did not endanger H.G.H.  See In re D.J.J., 178
S.W.3d 424, 430 (Tex. App.CFort Worth 2005, no pet.) (holding
evidence of father=s use of methamphetamines prior to child=s birth was
insufficient evidence of endangering conduct).  However, unlike appellant, the
parent in In re D.J.J. was not incarcerated for the additional offenses
of possession of a firearm and burglary.  See id. at 426; see also
In re S.M.L., 171 S.W.3d at 479 (considering parent=s criminal
behavior both before and after child=s birth as
evidence of a course of conduct endangering the child).  Further, the
parent in In re D.J.J. was incarcerated for drug offenses during the
entire life of his child, up to and including the time of trial.  Id.  Appellant,
however, was released from jail when H.G.H. was approximately six weeks old and
afforded an opportunity to improve his life circumstances and provide for his
child.  Instead, appellant chose to commit burglary.  Contrary to appellant=s argument, we do
not consider his drug offenses in a vacuum.  Viewing the record as a whole, we
find that appellant=s drug offenses and burglary conviction
are evidence of his ongoing course of criminal conduct, both before and after
the birth of H.G.H.  See Boyd, 727 S.W.2d at 534. 

In his second argument, appellant asserts, without citing
any authority, that his criminal activity Ais limited,@ and the burglary
for which he is currently incarcerated is not a violent crime.  Appellant
further argues that H.G.H. was not affected by the burglary because she was not
with appellant when he committed the offense.  Appellant committed burglary
after the birth of H.G.H. and during a time when he should have been improving
his life circumstances.  Further, we find it impossible to believe that H.G.H.
has not been affected by her father=s conduct which
caused them to be separated since January of 2005.








Appellant=s repeated incarceration, continuing
propensity towards criminal conduct, failure to support H.G.H., and failure to
complete, or make a good-faith effort to complete, the court-ordered family
services constitute a course of conduct which endangered the physical or
emotional well-being of H.G.H.  See id.  Therefore, after reviewing the
evidence, we conclude the trial court=s determination
that appellant engaged in conduct or knowingly placed H.G.H. with persons who
engaged in conduct which endangered her physical or emotional well-being is
supported by clear and convincing evidence that is legally and factually
sufficient. Accordingly, appellant=s second point of
error is overruled.

Because appellant=s parental rights
can be terminated with a finding of best interest of the child and either of
the two 161.001(1) grounds challenged by appellant, we need not address
appellant=s first point of error.  See In re U.P., 105
S.W.3d at 236; In re J.T.G., 121 S.W.3d at 127B28.

Appointment of CPS as Sole Managing
Conservator of H.G.H.








In his fourth and fifth issues, appellant argues there is
insufficient evidence to support the trial court=s finding that
appointment of CPS, rather than Sherrill Mullins,[4]
as sole managing conservator of H.G.H. is in the best interest of the child. 
Section 161.207 of the Family Code provides that A[i]f the court
terminates the parent-child relationship with respect to both parents or the
only living parent, the court shall appoint a suitable, competent adult, the
Department of Protective and Regulatory Services, a licensed child-placing
agency, or an authorized agency as managing conservator of the child.@  Tex. Fam. Code Ann. ' 161.207(a)
(Vernon 2002).  The best interest of the child is the primary consideration in
determining issues of conservatorship.  Tex.
Fam. Code Ann. ' 153.002 (Vernon 2002); see also In re
J.R.P., 55 S.W.3d 147, 151-52 (Tex. App.CCorpus Christi
2001, pet. denied) (holding appointment of Department of Protective and
Regulatory Services as managing conservator of child, rather than biological
grandfather, was in child=s best interest).  We give wide latitude
to a trial court=s decision on custody, control,
possession, and visitation matters.  Gillespie v. Gillespie, 644 S.W.2d
449, 451 (Tex. 1982). We will reverse the trial court=s order only if it
appears from the record as a whole that the trial court abused its discretion. 
Id.  A trial court abuses its discretion when it acts arbitrarily or
unreasonably, without reference to any guiding rules or principles.  Owens-Corning
Fiberglass Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998). 

On July 26, 2005, Mullins intervened in the termination
suit requesting appointment as managing conservator of H.G.H.  The trial court
subsequently terminated the parental rights of both of H.G.H.=s natural parents
and appointed CPS as her sole managing conservator.  Appellant contends the
trial court erred in denying Mullins= petition because
Mullins has a safe and stable home; Mullins is gainfully employed; and it is in
H.G.H.=s best interest to
maintain a connection with her biological family.  DFPS argues H.G.H=s best interests
are served by remaining with her foster family because Mullins failed to
demonstrate a consistent interest in H.G.H. and, by the time of trial, had not
bonded with the child.  DFPS also points to the testimony of H.G.H.=s foster mother as
evidence that H.G.H. resides in a safe and stable home and has bonded with a
loving foster family who seeks to adopt her.  








At trial, Mullins testified she had not bonded with H.G.H. 
Mullins further testified she had limited contact with H.G.H. and did not want
to bond with her before DNA testing confirmed appellant was H.G.H.=s father in June
of 2005.  Mullins visited H.G.H. two to three times after August of 2004, and
only once during the six months preceding trial.  CPS caseworker Carolyn Davis
testified Mullins visited H.G.H. on December 29, 2005 but ended her visit early
because H.G.H. did not recognize Mullins and started to cry.  Davis testified H.G.H.
should remain with her adoptive family with whom she has bonded.  Sherri
Simmons, a CASA program director in Brazoria County, testified CASA did not
recommend placement with Mullins because Mullins= home study was
not approved, and Mullins has had limited contact with H.G.H. 

H.G.H.=s foster parents are gainfully employed
and maintain a stable home environment.  They  involve their children in a
variety of activities and place a high degree of importance on education. 
H.G.H.=s foster mother
testified she took two months off from work to bond with  H.G.H. when CPS
placed H.G.H. with her family.  H.G.H. is developing normally and has bonded
with her foster parents and eight year-old foster sister.  H.G.H.=s foster mother
testified she and her husband love H.G.H. and seek to adopt her.  

Based on our review of the record, we hold that the trial
court did not abuse its discretion in appointing CPS sole managing conservator
of H.G.H.  Accordingly, appellant=s fourth and fifth
points of error are overruled.  

 

Having considered appellants points of error necessary to
final disposition of this appeal, we affirm the judgment of the trial court.

 

 

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered and Memorandum Opinion
filed January 25, 2007.

Panel consists of Justices Yates,
Anderson, and Hudson.









[1]  At trial, Gallion testified she had seen appellant
prior to August 12, 2004 but did not know who he was.  Gallion testified: ACome to find out, I had actually seen [appellant] and
did not know it was him at one point in time.  I was leaving [Gaston=s] apartment, and he was going up to it.  I found out
when I met [appellant] later on, that that [sic] was actually him.  So I=m not really sure when he was in jail and when he wasn=t.@ 





[2]  CPS conducted a home study to evaluate Sherrill Mullins= life circumstances and ability to
care for H.G.H.  





[3]  Five months elapsed between the time the trial court
issued its temporary orders and appellant=s
incarceration on January 3, 2005.   CPS caseworker Elizabeth Shreeves testified she did not
know if appellant could have completed his services prior to his incarceration;
however, he definitely could have gotten more involved.  Shreeves further
testified appellant told her that he was waiting to schedule his services. 





[4]  Mullins filed a notice of appeal in this case;
however, her notice of appeal was not timely filed.  This is an accelerated
appeal from a judgment signed February 6, 2006.  The notice of appeal was due
February 27, 2006.  See Tex. R.
App. P. 26.1(b).  Mullins,
however, filed her notice of appeal on March 14, 2006, a date within fifteen
days of the due date for the notice of appeal.  See Verburgt v. Dorner, 959
S.W.2d 615, 617 (Tex. 1997) (holding that a motion for extension of time is Anecessarily implied@
when the perfecting instrument is filed within fifteen days of its due date). 
Mullins did not file a motion to extend time to file the notice of appeal. 
While an extension may be implied, Mullins is still obligated to come forward
with a reasonable explanation to support the late filing.  See Miller v.
Greenpark Surgery Center Assocs., Ltd., 974 S.W.2d 805, 808 (Tex. App.CHouston [14th Dist.] 1998, no pet.).  Further, Mullins
failed to file an appellate brief.  See Tex. R. App. P. 38.1, 38.8(a).  Therefore, Sherrill Mullins= appeal is dismissed for want of jurisdiction and want
of prosecution.  See Tex. R. App.
P. 26.1(b), 38.8(a)(1).