

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00429-CV

**In the Interest of K.A.H.**, M.N.H., and J.S.H., Minor Children

From the 38th Judicial District Court, Uvalde County, Texas
Trial Court No. 2011-08-28252-CV
The Honorable Cathy O. Morris, Judge Presiding

Opinion by:     Steven C. Hilbig, Justice

Sitting:        Catherine Stone, Chief Justice
                Sandee Bryan Marion, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:  December 12, 2012

AFFIRMED

Liza and Manuel H.[1], the maternal grandparents of K.A.H., M.N.H., and J.S.H., appeal the trial court's final order that names the Texas Department of Family and Protective Services ("the Department") the children's permanent managing conservator and fails to award Liza and Manuel any conservatorship rights. Appellants complain the trial court erred in so ruling because the Department had not provided appellants a service plan. We affirm the order.

### BACKGROUND

In 2008, as the result of a previous case filed by the Department, Liza and Manuel were named permanent managing conservators of their three minor granddaughters, K.A.H., M.N.H.,

---

[1] To protect the identity of the minor children, we refer to the children and their mother by their initials, and refer to appellants by their first names. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2012); TEX. R. APP. P. 9.8.

and J.S.H. The children's mother, N.H., was named a possessory conservator and her possession was limited to the times and places agreed to by Liza and Manuel. The Department filed the current case in August 2011, seeking emergency possession of the children, a change in conservatorship, and termination of the parents' parental rights. The affidavit accompanying the petition asserted that the children were in N.H.'s possession, and that Liza and Manuel had stated they were unable to keep physical custody of the children or keep them away from their mother. The referral was initiated by a police detective who reported that threats had been made against the children as a result of N.H.'s involvement with "dangerous gang members." The trial court issued an emergency order and scheduled a full adversary hearing.

Liza and Manuel appeared in person and through counsel at the September 2011 adversary hearing, and were represented by counsel throughout the rest of the case. After the hearing, the trial court issued a temporary order naming the Department temporary managing conservator of the children. The temporary order also included separate paragraphs directed to each respondent, including Liza and Manuel, requiring compliance with service plans. The Department subsequently prepared service plans for the fathers and alleged father of the children. The court approved those service plans at an October 2011 hearing, and made them an order of the court. No service plan was prepared for N.H.[2] or for Liza and Manuel. However, the court authorized supervised visitation between Liza and Manuel and the children. The record reflects that Liza and Manuel had telephone contact and supervised visits with the children throughout the pendency of the case.

The trial court held hearings in December 2011, January 2012, and March 2012. Following each hearing, the court issued an order reciting that the court had reviewed the service

---

[2] The Department asserted N.H. had subjected the children to aggravated circumstances and sought a waiver of the requirement of a service plan for the mother pursuant to section 262.2015 of the Family Code. *See* TEX. FAM. CODE ANN. § 262.2015 (West Supp. 2012).

plans and permanency progress reports filed by the Department and found that no further plans or services were necessary. Each order also included findings that neither the parents nor "any other person or entity entitled to service under Chapter 102, Texas Family Code" (which includes Liza and Manuel) is able to provide the children with a safe environment, and that no other plans or services were needed to meet the children's needs or circumstances.

At the trial on the merits, the Department presented evidence that N.H. had an extensive criminal history, as well as a history with the Department. During the time Liza and Manuel were the children's managing conservators, the Department "substantiated" three allegations against N.H. for abuse and neglect of the children. The Department investigator testified she held a family meeting with N.H., Liza, and Manuel. She explained to them that as managing conservators Liza and Manuel were expected to protect the children and to prohibit them from going with N.H. if she were exposing them to dangers. The investigator testified Liza and Manuel knew the kind of activities N.H. was involved in and understood what was expected of them. They told her that as the children got older, it was difficult for them to keep them away from their mother.

In August 2011, just two months after the family meeting, Detective Juan Martinez contacted the Department after N.H. came to him and told him gang members had placed a "hit" on her and the children. Detective Martinez testified he knows N.H. and that she had been involved with Mexican Mafia members. The Department found that fifteen-year-old K.A.H. was again living with N.H. and the two younger children were moving back and forth between N.H.'s home and Liza and Manuel's home. In the course of the investigation of the threat, it was learned that K.A.H. had been drugged and raped by an adult male. K.A.H. told the Department and Detective Martinez that N.H. had been providing young girls to the man for the purpose of having sex. She asserted that N.H. had been trying to sell K.A.H.'s "services" to the man for

$1000. The man contacted K.A.H. without going through N.H., and K.A.H. went to his hotel room, where he provided her with cocaine and had sex with her for money.

Manuel acknowledged that he knew N.H. used drugs and that she associated with "unsavory individuals." He also testified that N.H. had attempted suicide several times, once when at least one of the children was present. He testified it was against his better judgment to allow the children to go with N.H., but that he would "give in" when the children cried. Liza testified N.H. and the children wanted to be together, and that as the children got older, she and Manuel had been unable to prevent it. Manuel testified that he thought he and Liza could properly supervise the children if they had help from the Department, but stated he had not been able to communicate with anyone from the Department while this case was pending.

The Department's legal caseworker testified Liza and Manuel were found to have negligently supervised the children. She stated that by allowing N.H. to have unsupervised access to the children, they had put the children in dangerous situations that resulted in harm to them. The caseworker testified Liza and Manuel had not requested any type of services from the Department while the case was pending. The Department and the children's attorney ad litem argued the Department should be made the children's permanent managing conservator.

The trial court rendered a final order that terminated N.H.'s parental rights and those of the fathers, and named the Department permanent managing conservator of the children. The trial court made oral findings that Liza and Manuel had failed to protect the children in the past and that there was no evidence to suggest anything would be different in the future. The court ruled that it would not appoint Liza and Manuel possessory conservators of the children, but stated that if circumstances changed, the court would consider giving them access to the children. Liza and Manuel appealed.

**DISCUSSION**

In one issue, Liza and Manuel argue the trial court's order removing them as conservators of the children was error and not in the children's best interest because the Department did not give Liza and Manuel a service plan and an opportunity to comply with it.

Liza and Manuel first contend the trial court ordered the Department to prepare a service plan for them. They assert this order appears in paragraph 23.5 of the trial court's September 6, 2011 temporary order, which stated:

> 23.  Compliance with Service Plan
> . . .
> 23.5 LISA [] AND MANUEL [] is [sic] ORDERED, pursuant to § 263.106 Texas Family Code, to comply with each requirement set out in the Department's original, or any amended, service plan during the pendency of this suit.

This paragraph does not contain any directory language addressed to the Department. Rather, it directs Liza and Manuel to comply with any original or amended plan the Department may provide. Section 263.106 of the Family Code, referred to in the order, requires the trial court to review any service plans prepared by the Department, make any changes the court deems necessary, and incorporate them into orders of the court. *See* TEX. FAM. CODE ANN. § 263.106 (West Supp. 2012). Neither paragraph 23.5 of the temporary order nor section 263.106 of the Family Code requires the Department to prepare a service plan for nonparent managing conservators.

Liza and Manuel next assert that a service plan is required by section 263.102(e) of the Family Code, which requires the Department to provide "time-limited family reunification services" "to the child and the child's family, as applicable," [r]egardless of whether the goal stated in a child's service plan . . . is to return the child to the child's parents or to terminate parental rights and place the child for adoption." *Id.* § 263.102(e) (West 2008). We do not

construe this provision to require the Department to prepare a service plan for nonparent managing conservators. Moreover, it is apparent from the language used in section 263.102, which sets out the requirements of service plans, and sections 263.103 and 263.104, which concern the signing and taking effect of original and amended service plans, that the service plans discussed in those sections are expressly intended for parents, not nonparent managing conservators. *See id.* § 263.102 (West 2008); §§ 263.103 – 263.104 (West Supp. 2012).

Moreover, Liza and Manuel failed to preserve their complaint that the trial court erred in not compelling the Department to provide them a service plan. Liza and Manuel were represented by counsel throughout the case, and the record demonstrates that one or more of them attended most, if not all, of the hearings. The Department prepared and the court approved service plans for the children's fathers in October 2011. The court held further hearings in December 2011, January 2012, and March 2012. Following each hearing, the court issued an order finding that no further plans or services were necessary. Liza and Manuel did not object to these findings or to the Department's failure to provide them a service plan. Manuel testified he discussed with his lawyer that he wanted help from the Department to learn how to supervise the children and that he was unable to communicate with the Department. Nevertheless, there is no evidence in the record that they or their attorney requested services or a service plan from the Department during the pendency of this case or that they complained to the trial court about the lack of a service plan to the trial court.

## CONCLUSION

The trial court did not order the Department to prepare a service plan for Liza and Manuel. Nor have appellants shown the trial court erred by failing to require a service plan for them. We hold the trial court did not abuse its discretion in denying Manuel and Liza

conservatorship of the children. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re J.R.P.*, 55 S.W.3d 147, 151-52 (Tex. App.—Corpus Christi 2001, pet. denied).

Steven C. Hilbig, Justice